# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNPUBLISHED

FRED MUELLER; BONNIE HORNER,
            *Plaintiffs-Appellants,*

v.

CLAYTON A. THOMAS; DONALD E.
CLARKE; CLYDE HEINTZELMAN,
            *Defendants-Appellees.*

No. 02-2091

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-02-331-A)

Argued: September 24, 2003

Decided: December 19, 2003

Before WILKINSON and GREGORY, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** John Martin Wood, REED SMITH, L.L.P., Falls Church,
Virginia, for Appellants. John Paul Corrado, MORRISON & FOER-
STER, L.L.P., McLean, Virginia, for Appellees. **ON BRIEF:** Frank
T. Pimentel, REED SMITH, L.L.P., Falls Church, Virginia, for
Appellants. Stephen M. Colangelo, John A. Trocki, III, Brett A. Wal-
ter, MORRISON & FOERSTER, L.L.P., McLean, Virginia, for
Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Plaintiffs Fred Mueller and Bonnie Horner are the former owners of FreBon International Corporation, a telecommunications company that they sold to Net2000 Communications in June 2000. Mueller and Horner subsequently filed suit against a number of Net2000's officers, alleging that the officers fraudulently misrepresented and failed to disclose material facts. The district court dismissed the suit, however, finding that Mueller and Horner were not entitled to rely on any oral representations inconsistent with the written purchase agreement for FreBon, and also that the officers lacked any duty of disclosure. Because the district court properly construed the parties' purchase agreement and the relevant securities laws, we affirm.

I.

Mueller and Horner are the former co-owners of FreBon International Corporation ("FreBon"), a video conferencing service. In June 2000, Mueller and Horner agreed to sell FreBon to Net2000 Communications, Inc. ("Net2000"), a former local exchange carrier. Representing Net2000 in the sale were three senior officers and directors at Net2000: Clayton Thomas, Chairman of the Board of Directors and Chief Executive Officer; Donald Clarke, Executive Vice-President, Chief Financial Officer, and Treasurer; and Clyde Heintzelman, President and a Director.

On June 28, 2000, the parties executed a Stock Purchase Agreement ("Agreement"), pursuant to which Mueller and Horner agreed to sell all of their stock in FreBon to Net2000 in exchange for cash, Net2000 stock, and an earnout provision. The earnout provision allowed Mueller and Horner to earn as much as an additional $15 million if FreBon met certain financial milestones as a wholly-owned subsidiary of Net2000 during the next year. At the same time that

Net2000 entered into the Stock Purchase Agreement with Mueller and Horner, it also consummated a $200 million credit facility with TD Securities ("Credit Facility").

When FreBon did not meet the financial targets outlined in the Agreement, Mueller and Horner did not realize the benefits of the earnout provision. They then filed suit against Net2000 in September 2001 for breach of the Agreement. When Net2000 filed for bankruptcy two months later, Mueller and Horner abandoned their breach of contract claim and initiated the present fraud action against Net2000 officers Clarke, Thomas, and Heintzelman. Specifically, Mueller and Horner claimed that the Net2000 officers had misrepresented material facts during negotiations over the Agreement and failed to disclose the terms of the Credit Facility. According to Mueller and Horner, the Net2000 officers' misrepresentation and omission of material facts violated federal and state securities laws and also constituted common law fraud and constructive fraud.

The district court dismissed Mueller and Horner's complaint. It held that Mueller and Horner were not justified in relying on the Net2000 officers' alleged misrepresentations, and that Mueller and Horner had failed to assert any basis on which the Net2000 officers had a duty to disclose the Credit Facility. Mueller and Horner now appeal from the district court's grant of the Net2000 officers' motion to dismiss.

## II.

Mueller and Horner first allege that during negotiations over the Agreement in April and May 2000, Clarke and Thomas fraudulently misrepresented several material facts, thereby inducing Mueller and Horner to agree to Net2000's acquisition of FreBon. According to Mueller and Horner, Clarke and Thomas represented that the telecommunications network of Net2000 would support FreBon's videoconferencing systems; that Mueller and Horner would have operational control of FreBon as a wholly-owned subsidiary of Net2000, at least during the one-year period of the earnout provision; and that Net2000 would make various efforts to support FreBon's sales objectives, such as by training its employees regarding FreBon's services or authorizing FreBon to hire additional sales and marketing personnel. In addi-

tion, Clarke allegedly misrepresented that Net2000 would provide the support necessary to meet the Agreement's revenue targets; and that Net2000 would take other reasonable commercial efforts to help Mueller and Horner achieve the earnout. Mueller and Thomas assert that all of these representations were false.

The district court's response was twofold. First, the court held that Mueller and Thomas should not have relied on the alleged misrepresentations that are directly addressed in the Agreement, because they had signed an Agreement that "expressly made such representations conditional." For instance, Article 5.14(2) of the Agreement states that Net2000 will train its sales and marketing personnel regarding FreBon's services. And Article 5.14(3) and (4) state that Net2000 will authorize FreBon to hire additional sales and marketing personnel. However, Article 5.14 makes all of the obligations set forth in that section — like training and hiring personnel — "subject to change at any time based on [Net2000's] business conditions, the competitive marketplace, and directives from [Net2000's] executive management and/or Board of Directors." The district court therefore concluded that Mueller and Horner could not justifiably rely on earlier oral representations by the Net2000 officers, because the Agreement had expressly conditioned those representations and left Net2000 free to adjust its obligations to Mueller and Horner. *See, e.g.*, *Foremost Guar. Corp. v. Meritor Sav. Bank*, 910 F.2d 118, 120 (4th Cir. 1990).

As for the alleged misrepresentations that are not covered in the Agreement, like whether Net2000's telecommunications network would support FreBon's videoconferencing system or whether Mueller and Horner would retain control of FreBon during the one-year period of the earnout, the district court concluded that the Agreement "superseded" these prior oral representations. Article 9.3 of the Agreement states that the documents signed by the parties "constitute the entire agreement among the Parties" and "supersede[ ] any prior understandings, agreements or representations." According to the district court, Mueller and Horner therefore were not entitled to rely on any additional oral representations not incorporated into the Agreement.

### III.

Mueller and Horner further contend that the terms of the Credit Facility were unknown to them and were not disclosed to them by the

Net2000 officers. Those terms included minimum revenue and earnings requirements, which, if not met, were an event of default under the Credit Facility. Default permitted TD Securities to control Net2000 and ultimately to force Net2000 to reorganize in bankruptcy. Mueller and Horner claim that, without knowing the terms of the Credit Facility, they were unable to adequately assess the risk of selling FreBon to Net2000. Mueller and Horner do not dispute, however, that they knew of the existence of the Credit Facility and never asked about its specific terms. They assert only that the Net2000 officers had an independent fiduciary duty as control persons, corporate insiders, and substantial shareholders of Net2000 to disclose the Credit Facility's terms.

The district court, however, found that Mueller and Horner had not alleged any basis on which the Net2000 officers had a duty to disclose the Credit Facility's terms. The federal securities laws do not give rise to a duty to disclose; rather, "the duty to disclose material facts arises only where there is some basis outside the securities laws, such as state law, for finding a fiduciary or other confidential relationship." *Fortson v. Winstead, McGuire, Sechrest & Minick*, 961 F.2d 469, 472 (4th Cir. 1992). As the district court noted, a contract between sophisticated commercial parties transacting at arm's length generally does not create a fiduciary relationship under Virginia state law. *See, e.g.*, *Diaz Vincente v. Obenauer*, 736 F.Supp. 679, 695 (E.D. Va. 1990). And Mueller and Horner have not argued that the language of the Agreement itself explicitly creates such a fiduciary relationship.

## IV.

Having reviewed the briefs and heard oral argument, we find that the district court properly interpreted the parties' purchase agreement and the relevant securities laws. The district court's dismissal of the action in this case is therefore

*AFFIRMED*.