WESTERN CAPITAL PARTNERS,
LLC, Plaintiff,

v.

ALLEGIANCE TITLE & ESCROW,
INC., and Atlantic Coast Home
Builders, Inc., Defendants.

Action No. 2:07cv83.

United States District Court,
E.D. Virginia,
Norfolk Division.

Oct. 16, 2007.

Jonathan L. Hauser, Esquire, Troutman Sanders LLP, Virginia Beach, VA, for Plaintiffs.

Michael E. Grey, Esquire, Mercer, Grey & Arsenault, Virginia Beach, VA, Douglas E. Miller, Esquire, James H. Shoemaker, Jr., Esquire, Patten Wornom Hatten & Diamonstein LC, Newport News, VA, for Defendants.

### *OPINION AND ORDER*

REBECCA BEACH SMITH, District Judge.

Western Capital Partners, LLC ("WCP"), brings this action seeking to recover funds held in escrow by defendant Allegiance Title & Escrow, Inc. ("Allegiance"), free and clear of the claims of defendant Atlantic Coast Home Builders, Inc. ("Atlantic"). This matter comes before the court on WCP's motion for partial summary judgment. For the reasons set forth below, WCP's motion for partial summary judgment is **GRANTED.**

### I. Factual and Procedural History

The facts are presented in the light most favorable to Atlantic and Allegiance. *See, e.g., Lee v. York County Sch. Div.*, 484 F.3d 687, 693 (4th Cir.2007) (explaining that in reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving parties).

On February 24, 2006, WCP extended a loan to Brookhollow, LLC ("Brookhollow"), and various individuals (collectively, the "Borrowers") in the original principal amount of $3,600,000, as evidenced by a note and various loan documents (collectively, the "Loan Documents"). The note was executed in connection with the sale of real property located in Chesapeake, Virginia, by Atlantic to Brookhollow. As one of the conditions of the loan, WCP requested that $200,000 of the sale proceeds be held in escrow by Allegiance, the closing agent, in an interest-bearing account. An escrow agreement (the "Escrow Agreement") was prepared.[1]

The Escrow Agreement provided that the escrow funds would be disbursed to Atlantic only if (a) certain development milestones were achieved, and (b) no uncured event of default existed under the Loan Documents. The Escrow Agreement also provided that in the event of a default on the loan, Allegiance would allow WCP and the Borrowers six months to resolve the default. It further provided that if the default was not resolved within that timeframe, the $200,000, along with any accrued interest, would be paid to WCP. The Escrow Agreement was executed at the

---

1. WCP and Atlantic engaged in extensive negotiations over the terms of the Escrow Agreement.

closing by the Borrowers, Atlantic,[2] and Allegiance, but it was not executed at that time by WCP, who did not attend the closing. Nor did WCP provide an original signature page for the Escrow Agreement at the time of the closing.[3]

In addition to the Escrow Agreement, WCP prepared at least fourteen other documents for execution at the closing (collectively with the Escrow Agreement, the "Closing Documents"). WCP sent the final versions of all of the Closing Documents to Allegiance to arrange for their execution at the closing. One of the Closing Documents was an accommodation letter between WCP and the Borrowers (the "Accommodation Letter"). The Accommodation Letter set forth a number of post-closing conditions that the Borrowers were required to satisfy.[4] Atlantic was not a party to the Accommodation Letter. Atlantic's counsel, Larry Perkins, received initial drafts of all of the Loan Documents, including the Accommodation Letter, but was not copied on subsequent drafts of the revised Accommodation Letter.[5] In distributing the Loan Documents, WCP's counsel made clear that they were "in draft form" only. Larry Perkins ultimately received a final version of the Accommodation Letter, but he does not remember whether or not this occurred before or after the closing. (W.L. Perkins Dep. 39:19–24, Aug. 9, 2007.)

On August 11, 2006, WCP declared the loan in default.[6] WCP declared default based upon numerous provisions of the Loan Documents. Importantly, WCP did not declare default based upon the Borrowers' failure to comply with the Accommodation Letter; WCP never sought to enforce the Accommodation Letter. Six months later, on February 12, 2007, WCP issued a demand on Allegiance for disbursement of the escrow funds. On February 14, 2007, Atlantic denied WCP's right to entitlement of the escrow funds and instructed Allegiance to refuse to disburse the funds. Allegiance refused to disburse the funds.

On February 20, 2007, WCP filed this action against Allegiance and Atlantic, seeking the following relief: (1) a declaration that it is entitled to the escrow funds free and clear of the claims of Atlantic; (2) judgment against Allegiance in the amount of $200,000, plus interest from February 24, 2006, until the date of judgment; (3) an award of attorney's fees; and (4) any further relief this court deems proper. On March 13, 2007, Allegiance filed an answer coupled with a counterclaim and a cross-claim for interpleader pursuant to Federal Rule of Civil Procedure 22(1). On March 22, 2007, WCP filed an answer to Allegiance's counterclaim. On April 2, 2007, Atlantic filed an answer to Allegiance's cross-claim.

2. Atlantic's counsel did not attend the closing. Atlantic's President attended the closing on behalf of Atlantic.

3. WCP did not sign the Escrow Agreement until December 2006.

4. The provision of the Accommodation Letter that is the focus of the present dispute (the "Development Provision") requires the Borrowers to deliver, within fourteen days of the date of the Accommodation Letter, an executed contract between themselves and Atlantic

for "the construction, installation and completion of the site work [on the sale property]." Accommodation Letter ¶ G. Failure of the Borrowers to do so would give WCP the option of declaring the loan in default.

5. Atlantic was also not copied on subsequent drafts of other Loan Documents to which it was not a party.

6. Atlantic had also declared the loan in default on August 6, 2006, based upon the Borrowers' failure to make payments to Atlantic.

On April 4, 2007, Atlantic filed an answer to WCP's complaint. On May 10, 2007, WCP filed a motion for partial summary judgment. On May 24, 2007, Atlantic filed both a motion for leave to file an amended answer to WCP's complaint, as well as its opposition to WCP's motion for partial summary judgment. On May 30, 2007, Allegiance filed its response to WCP's motion for partial summary judgment. In a memorandum order dated June 13, 2007, this court denied WCP's motion for partial summary judgment and granted Atlantic's motion for leave to file an amended answer.[7] Pursuant to the court's order, Atlantic filed its amended answer on June 13, 2007.

The court granted WCP leave to file a second motion for summary judgment, and WCP filed its second motion for partial summary judgment on September 5, 2007. In its motion, WCP requests enforcement of the Escrow Agreement against Allegiance. Atlantic filed its opposition to WCP's motion for partial summary judgment on September 18, 2007. WCP replied on September 24, 2007.[8] The issue is ripe for review.

## II. Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden on the moving party may be discharged by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It is not enough "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case" in order to avoid summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

## III. Analysis

In its opposition to WCP's motion for partial summary judgment, Atlantic advances two arguments as to why the Escrow Agreement should not be enforced. First, it asserts that the Escrow Agreement is unenforceable because Atlantic's assent to the agreement was obtained by WCP's actual or constructive fraud. Second, Atlantic claims that the Escrow Agreement is unenforceable because WCP did not assent to its terms. These arguments are addressed in turn.

### A. Actual or Constructive Fraud

 When a party's assent to a contract is obtained by fraud, the contract is voidable. *E.g., Wilson v. Hundley*, 96 Va.

---

**7.** In denying WCP's motion for partial summary judgment, the court noted that it was unable to rule at such an early stage in the litigation that the Escrow Agreement was enforceable as a matter of law. Mem. Order at 8 & n. 6. This was largely due to the new factual assertions and affirmative defenses raised by Atlantic in its proposed amended answer. *Id.*

**8.** Allegiance did not respond to WCP's second motion for partial summary judgment. In its response to WCP's first motion for partial summary judgment, Allegiance relied solely on the fact that it cannot voluntarily disburse the funds to WCP without being placed in jeopardy of also having to pay Atlantic. In the absence of any new arguments set forth by Allegiance, the court assumes that Allegiance's position remains unchanged.

96, 30 S.E. 492, 494 (1898).[9] In order to prove actual fraud, a plaintiff must show (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled. *E.g., Evaluation Research Corp. v. Alequin,* 247 Va. 143, 148, 439 S.E.2d 387 (1994). In proving a claim of constructive fraud, the plaintiff need only show that the misrepresentation of material fact was made innocently or negligently, and not with intent to mislead. *Id.* Furthermore, when a party conceals a material fact with knowledge that the other party is acting on the nonexistence of the concealed fact, that concealment amounts to fraud. *Allen Realty Corp. v. Holbert,* 227 Va. 441, 450, 318 S.E.2d 592 (1984). However, "unlike fraud for affirmative misrepresentations, concealment requires a showing of intent to conceal a material fact; reckless nondisclosure is not actionable." *Bank of Montreal v. Signet Bank,* 193 F.3d 818, 827 (4th Cir.1999).

■■ When a claim of either actual or constructive fraud is based on the nondisclosure of a material fact, either a legal obligation, or some fiduciary or confidential relationship must exist between the parties giving rise to a duty to disclose. *Mountain Venture P'ship v. Town of Lovettsville,* No. 18525, 1997 WL 1070433, at *10 (Va. Cir. Ct. Oct.14, 1997) (unreported opinion) (citing cases); *see also Intra-Comm, Inc. v. Bajaj,* Civil Action No. 05–0955, 2006 WL 4535991, at *5 (E.D.Va. Apr.19, 2006) ("Under Virginia law, 'silence cannot give rise to liability for fraud in the absence of a duty of disclosure.'" (quoting *Sabet v. E. Va. Med. Auth.,* 775 F.2d 1266, 1270 (4th Cir.1984))). Furthermore, "[a] contract between sophisticated commercial parties transacting at arm's length generally does not create a fiduciary relationship under Virginia state law." *Mueller v. Thomas,* 84 Fed.Appx. 273, 275 (2003) (unpublished).

■ Atlantic argues that there are material facts in dispute surrounding the issue of fraud. In essence, Atlantic argues that WCP "concealed" the fact that, under the terms of the revised Accommodation Letter, Atlantic was required to develop the property. Atlantic argues that WCP inserted this provision into the Accommodation Letter despite knowing that Atlantic would not agree to this condition, as evidenced by earlier communications surrounding the transaction, in which Atlantic repeatedly and unequivocally refused to agree to develop the property as a condition of the transaction. Atlantic asserts that WCP materially changed the terms of the Accommodation Letter after it was

---

9. The Escrow Agreement does not contain a choice of law provision. However, the Loan Agreement states that Colorado law shall govern the Loan Agreement as well as the other Loan Documents, "except that the law of the jurisdiction in which the collateral is located may govern the validity, perfection, and enforcement of the security interest granted ... in such collateral." Loan Agreement ¶ 12. The Escrow Agreement makes clear that the "funds in the Escrow will serve as collateral for the Borrowers' full and prompt performance of their obligations under the Loan Documents." Escrow Agreement ¶ 6. Therefore, the law of the jurisdiction in which the escrow funds are located governs this dispute.

In its deposition under Federal Rule of Civil Procedure 30(b)(6), Allegiance's representatives stated that they did not know where the escrow funds are being held. (Allegiance Dep. 40:10–12, Aug. 2, 2007.) Absent evidence in the record to the contrary, the court assumes the funds are being held in Virginia, as Allegiance is a Virginia corporation with its principal place of business in Virginia Beach, Virginia. Therefore, according to the terms of the Loan Agreement, Virginia law governs this dispute over the escrow funds. Although they do not address the issue directly in their memoranda to the court, both parties have proceeded under Virginia law as well.

reviewed by Atlantic's counsel, thus triggering a duty to disclose.

WCP first argues that Atlantic does not allege the existence of a relationship between WCP and Atlantic that gives rise to a duty to disclose. WCP also argues that there are no facts to show that WCP concealed the terms of the Accommodation Letter from Atlantic. Finally, WCP argues that any reliance by Atlantic on WCP's purported misrepresentation was unreasonable, and that Atlantic cannot show any harm from WCP's misrepresentation, because WCP did not declare default based upon any breach of the Accommodation Letter.

The court agrees with WCP that Atlantic has not alleged any facts that impose a duty on WCP to disclose the terms of the Accommodation Letter to Atlantic. This was an arms-length business transaction between sophisticated parties. *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 829 (4th Cir.1999) ("A duty to disclose does not normally arise when parties are engaged in an arm's length transaction."). Nothing in the record suggests that WCP was under any legal duty to disclose the terms of the Accommodation Letter to Atlantic.

■ Furthermore, WCP correctly points out that there are no material facts in dispute that tend to show that WCP

"concealed" the revised Accommodation Letter. The undisputed facts show that final versions of all of the Loan Documents, including the Accommodation Letter, were fully available to Atlantic at the closing. It is further undisputed that Atlantic's President, James Perkins, who attended the closing on behalf of Atlantic, chose not to review any of the Loan Documents other than the Escrow Agreement.[10] The Escrow Agreement clearly states that the escrow funds are to be disbursed to Atlantic only if the development milestones were achieved, and "[n]o uncured event of default exist[ed] under the Loan Documents." Escrow Agreement ¶ 2. The Escrow Agreement defines "Loan Documents" as the "various documents [that] evidence[ ] and secure[ ] the Note." *Id.* ¶ A. The plain language of the Escrow Agreement makes clear that Atlantic's right to recover the funds in escrow was contingent upon the Borrowers not defaulting under any of the Loan Documents, including the Accommodation Letter.[11] Atlantic's failure to discover the Development Provision in the revised Accommodation Letter was the result of its decision not to review the Loan Documents, not the because of any "misrepresentation" or omission by WCP.

■ Assuming, *arguendo*, that WCP "misrepresented" the terms of the Accommodation Letter by failing to disclose the

---

10. Atlantic also emphasizes the late hour of the closing, the late delivery of the Loan Documents by WCP, and the fact that WCP's counsel did not provide a "redline" of the final documents, nor indicate that changes had been made to the earlier drafts. This does not change the undisputed fact that Atlantic knew that the Loan Documents it had received at an earlier time, including the Accommodation Letter, were in "draft form." Nor does it change the fact that Atlantic had ample opportunity at the closing—the closing that was rushed at Atlantic's own insistence—to review the Loan Documents prior to signing the Escrow Agreement. The Escrow

Agreement explicitly made disbursement of the escrow funds to Atlantic contingent upon the Borrowers' nondefault under each of the Loan Documents. Absent an affirmative representation by WCP that the earlier "drafts" would remain unchanged, which Atlantic does not allege, there are simply no facts tending to show fraud on the part of WCP.

11. Larry Perkins also explicitly warned Atlantic that it would not recover the escrow funds if the Borrowers defaulted under *any* of the Loan Documents.

Development Provision, there are no material facts that tend to show any reasonable reliance by Atlantic on this misrepresentation.[12] Although WCP did not affirmatively proffer the revised Accommodation Letter to Atlantic, Atlantic's decision not to have counsel present at the closing, and its decision not to review any of the Loan Documents, other than the Escrow Agreement, was unreasonable. *Regency Photo & Video, Inc. v. Am. Online, Inc.*, 214 F.Supp.2d 568, 572 (E.D.Va.2002) ("[A party's] decision to enter into a contract without reviewing its terms cannot give rise to a claim that [the other party to the contract] committed fraud."). The terms of the Escrow Agreement made clear that Atlantic's right to the funds in the escrow account was contingent upon the Borrowers not defaulting under any of the Loan Documents, which included the Accommodation Letter. By signing the Escrow Agreement, Atlantic bound itself to its terms, which plainly incorporated the other Loan Documents.[13]

■ Finally, WCP correctly points out that Atlantic has failed to produce any material facts that indicate that it was damaged by WCP's purported misrepresentation. It is undisputed that the Borrowers were in default under numerous provisions of the Loan Documents. Therefore, the very terms of the Escrow Agreement preclude Atlantic from recovering the escrow funds. WCP never sought to enforce the Accommodation Letter that is the center of this dispute. *E.g., Commonwealth Transp. Comm'r v. Saunders*, No. LC–3180, 2000 WL 558913, at *2 (Va. Cir. Ct. May 3, 2000) (unreported) ("The elements of fraud, actual or constructive, include that the misrepresentation must have been made to the injured party and that the *injury arises from* that party's reliance on the misrepresentation.") (emphasis added). WCP's alleged "fraud" surrounding the Accommodation Letter is completely unrelated to the Borrowers' default; i.e., if the Accommodation Letter did not exist, WCP would still be entitled to the escrow funds under the terms of the Escrow Agreement.

## B. Assent by WCP

Atlantic argues that the Escrow Agreement is void because there was no assent by WCP to its terms. Atlantic asserts that in order to enforce the Escrow Agreement, valid execution of the agreement by WCP was required, because WCP "provided no other consideration for the Agreement other than its agreement to be bound

12. Furthermore, even assuming that WCP "concealed" the Development Provision from Atlantic, and assuming that the Development Provision was material, there was no reason for WCP to believe that Atlantic was acting on the assumption that it did not exist. *Metrocall of Del., Inc. v. Cont'l Cellular Corp.*, 246 Va. 365, 374, 437 S.E.2d 189 (1993) ("Concealment of a fact that is material to the transaction, *knowing* that the other party is acting on the assumption that no such fact exists, is a much fraud as if existence of the fact were expressly denied.") (emphasis added). WCP had clearly indicated that the earlier versions of the documents provided to Atlantic were in "draft form." Without evidence that WCP knew that Atlantic understood this to mean that the documents would not change (which itself defies logic), there are no facts to support Atlantic's claim of concealment.

13. WCP also correctly points out that the fact that Atlantic was wary of the transaction from the outset, anticipating that the matter would end up in litigation, makes any reliance on WCP's purported "misrepresentation" all the more unreasonable. 37 Am.Jur.2d *Fraud and Deceit* § 248 (1968) ("Because a person must exercise proper vigilance in his or her dealings, if such person is put on notice as to the propriety of a representation, then that person has a duty to reasonably investigate before relying on the representation.").

by its terms." [14] (Def. Atlantic's Mem. Opposing to WCP's Second Mot. for Partial Summ. J. 18.)

WCP counters that it signed the Escrow Agreement after the closing, and nothing in any of the Loan Documents required WCP to sign it at the closing. WCP further argues that its actions manifest asset to the terms of the Escrow Agreement, and that it performed pursuant to the terms of the Escrow Agreement.

■ Even without WCP's signature, the Escrow Agreement is enforceable against Atlantic. 1 Michie's Jur. of Va. & W. Va., *Contracts* § 13 (2007) ("The signing of an agreement by one party only is sufficient, provided that party be the one sought to be charged. For he is estopped by his signature from denying that the contract was validly executed, though the paper be not signed by the other party who sues for the performance."). Only the signatures of Atlantic and Allegiance, the parties against whom the agreement is being enforced, are required.

■ More importantly, it is clear that WCP assented to the Escrow Agreement. Whether a party assented to the terms of a contract is ascertained "from that party's words or acts, not from his or her unexpressed state of mind." *Phillips v. Mazyck*, 273 Va. 630, 636, 643 S.E.2d 172 (2007). WCP's actions clearly manifest assent to the Escrow Agreement, despite the fact that WCP did not immediately sign it: WCP demanded the escrow

as a condition of funding the transaction, drafted and revised the Escrow Agreement, funded the transaction, signed the Escrow Agreement post-closing, and acted consistent with the terms of the Escrow Agreement by waiting six months from the Borrowers' default before requesting the release of the escrow funds. *See, e.g., Durham v. Nat'l Pool Equip. Co. of Va.*, 205 Va. 441, 445, 138 S.E.2d 55 (1964) (finding assent to a contract through the actions of the party who did not sign it).[15]

In sum, it appears that Atlantic seeks to void an agreement that it has come to regret entering into. Atlantic asks the court to invalidate the entire Escrow Agreement because it incorporates a document (the Accommodation Letter) containing a term (the Development Provision) with which Atlantic disagrees. Atlantic chose not to review the final version of the Accommodation Letter, or many of the other Loan Documents that contained provisions affecting its right to the escrow funds, and it cannot now seek to avoid the consequences of its actions by claiming it was fraudulently induced to sign the Escrow Agreement. Neither the Development Provision, nor anything else in the Accommodation Letter, provided the basis upon which WCP declared the loan in default. There are no material facts that support either Atlantic's claim of fraud or its claim that there was no mutual assent to the Escrow Agreement. Atlantic has failed to

---

14. Atlantic claims that WCP has provided no consideration for the Escrow Agreement because WCP loaned the Borrowers the $200,000 that was placed into the escrow account under separately enforceable instruments, and therefore the Borrowers are obligation to repay it regardless.

15. Atlantic's claim that WCP provided no consideration for the Escrow Agreement is without merit. Regardless of whether or not

the funds were borrowed from WCP under separately enforceable instruments, WCP funded the entire loan that made the sale from Atlantic to the Borrowers possible. Atlantic cannot change the fact that WCP is the original source of the escrow funds. The Escrow Agreement simply places additional conditions upon the Borrowers as part of the consideration they received from WCP in the form of the $3,600,000 loan.

meet its burden of coming forward with evidence, as opposed to argument and "unsupported speculation," adequate to defeat summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir.1992).

## IV. Conclusion

For the reasons stated above, WCP's motion for partial summary judgment is **GRANTED.** Under the terms of the Escrow Agreement, WCP is entitled to the $200,000 held in escrow, plus interest thereon,[16] in accordance with the terms of the Escrow Agreement.[17] The Clerk is **DIRECTED** to send a copy of this Opinion and Order to counsel for the parties.

**IT IS SO ORDERED**

16. WCP represented to the court that the parties have agreed on an appropriate interest rate to be used, as the escrow funds were not actually placed in an interest-bearing account.

17. The Escrow Agreement also provides that if any legal action is taken with regard to it, the prevailing party shall be entitled to reasonable attorney's fees and costs. However, in a Stipulated Order filed on September 28, 2007, the parties agreed to bifurcate the issue of liability and damages from the issue of reasonable attorney's fees. Accordingly, the court will not address the issue of reasonable attorney's fees at this time.