James L. DAVIS, Plaintiff,

v.

**OLD DOMINION TOBACCO COMPANY, INC., d/b/a Atlantic Dominion Distributors, Inc., and Robin D. Ray, Individually, and Old Dominion Tobacco Company, Inc. Deferred Compensation Agreement, and Old Dominion Tobacco Company, Inc. Board of Directors, Defendants.**

James L. Davis, Plaintiff,

v.

**Old Dominion Tobacco Company, Inc., d/b/a Atlantic Dominion Distributors, Inc., Defendant.**

Civil Action Nos. 2:09cv603, 2:10cv130.

United States District Court,
E.D. Virginia,
Norfolk Division.

Dec. 10, 2010.

James Matthew Mundy, John Ignatius Paulson, Louis George Paulson, Paulson & Paulson PLC, Virginia Beach, VA, for Plaintiff.

Mark Edward Warmbier, Scott William Kezman, Kaufman & Canoles P.C., Norfolk, VA, for Defendants.

## OPINION

REBECCA BEACH SMITH, District Judge.

This action is before the court on the defendants' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, the Motion for Summary Judgment is **GRANTED.**

### Procedural History

The plaintiff, James L. Davis, filed an Amended Complaint ("Complaint")[1] in the Circuit Court for the City of Virginia Beach, Virginia, alleging fraud, constructive fraud, and undue influence against the defendants, and breach of contract against Old Dominion Tobacco Company, Inc. ("Old Dominion"). On December 9, 2009, the defendants removed the plaintiff's causes of action to this court, pursuant to 28 U.S.C. § 1441(b), asserting that the plaintiff's breach of contract claim "arises under" a question of federal law, namely the Employee Retirement Income Security Act ("ERISA"). On February 26, 2010, the court found that the plaintiff's breach of contract claim, Count VI of the Complaint, was completely preempted by ERISA, and was, therefore, properly re-moved to this court. Additionally, the court found that the plaintiff's state law tort claims were properly removed to this court under this court's supplemental and pendent jurisdiction, pursuant to 28 U.S.C. §§ 1367(a) and 1441(c), respectively. On March 8, 2010, the court found that all the plaintiff's claims were completely preempted by ERISA, and granted the plaintiff leave to amend the Complaint so that he could clarify his claims under ERISA, and raise all claims, as appropriate, for any purported violations of ERISA's provisions.

On March 26, 2010, the plaintiff filed a Second Amended Complaint ("Amended Complaint"), stating causes of action under ERISA.[2] As in the Complaint, the plaintiff claims that his employer, defendant Old Dominion, fired him, at the behest of defendant Robin Ray ("Ray"), while he was disabled, in order to preclude him from collecting benefits purportedly due under an ERISA plan.[3] Accordingly, in Count I, the plaintiff seeks recovery of ERISA benefits, pursuant to 29 U.S.C. §§ 1132(a)(1)(B) and (3); in Count II, the plaintiff states a claim for interference with rights protected by ERISA, pursuant to 29 U.S.C. § 1140; and, in Count III, the plaintiff states a claim for breach of fiduciary duty, pursuant to 29 U.S.C. §§ 1104 and 1109. On March 25, 2010, the plaintiff filed, as a separate cause of action in this court, a complaint ("ADEA/ADA Complaint") stating causes of action arising under the Age Discrimination in Employment Act ("ADEA") and the American with Disabilities Act ("ADA").[4] In the

---

1. The court will hereafter refer to the Amended Complaint in state court as the "Complaint."

2. All references hereafter to this filing in federal court will be to the "Amended Complaint."

3. The facts stated in the Amended Complaint are substantively the same as those in the Complaint, except that the plaintiff has stated additional facts to support and clarify his claim for relief under ERISA.

4. All references hereafter to this filing in federal court will be to the "ADEA/ADA Complaint."

ADEA/ADA Complaint, the plaintiff alleges the same factual background as he alleges in the Amended Complaint. In Count I, he states a claim for discrimination in violation of the ADEA, pursuant to 29 U.S.C. 621 *et seq.* In Count II, he states a claim for discrimination in violation of the ADA, pursuant to 42 U.S.C. § 12101 *et seq.* On April 28, 2010, upon joint motion by all parties, the court consolidated the two actions, with both to proceed under Civil Action No. 2:09cv603.

On May 21, 2010, the court denied the defendants' Motion to Dismiss Count I of the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). On September 7, 2010, the defendants filed the instant Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56(b). On September 28, 2010, the plaintiff filed an untimely Response in Opposition ("Response"). On October 13, 2010, the court granted the plaintiff's Mo-

tion for Leave to File his Response After the Expiration of the Specified Time, and on October 15, 2010, the defendants filed their Reply. The Motion for Summary Judgment is now ripe for review.

### Factual History

Unless otherwise noted, the following facts have been stipulated by the parties, *see* Final Pretrial Order, ECF No. 60, and/or admitted.[5] The plaintiff was an employee of defendant Old Dominion for more than forty years. Defendant Robin Ray ("Ray") is a co-owner and President of Old Dominion, and is the plaintiff's cousin. During the course of the plaintiff's employment with Old Dominion, he was promoted to Vice President of the Beverage, $CO_2$, and Vending Department. In 1992, after becoming Vice President, the plaintiff entered into a Deferred Compensation Agreement with Old Dominion ("1992 Agreement").[6] Under the 1992 Agree-

---

**5.** In determining whether a genuine issue of material fact exists, "the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." E.D. Va. Loc. Civ. R. 56(B); *see also* Fed.R.Civ.P. 56(e). The defendants contend that the court should ignore the Response, and only consider their statement of undisputed facts, because the Response was filed "out of time." *See* Reply in Supp. of Mot. for Summ. J 1 n. 1, ECF No. 59 [hereinafter "Reply"]. The court disagrees and directs the defendants to the court's October 13, 2010 Order granting the plaintiff's Motion for Leave to File his Response After the Expiration of the Specified Time. ECF No. 58. For that reason, citation to *Fuqua v. Tarmac of America, Inc.*, 228 F.Supp.2d 755 (E.D.Va. 2002) is unavailing. In that case, as here, the plaintiff filed beyond the deadline. However, Fuqua never moved for an extension, and, accordingly, one was never entered. The defendants also point to *Fuqua* in support of their contention that the court should only consider the defendants' statement of undisputed facts because the Response "did not specifically oppose any of the [defendants']

Undisputed Facts." Reply 1 n. 1. Again, citation to *Fuqua* is unavailing. Although the court noted that Fuqua did "not attempt to answer or dispute the defendants' facts *directly*," *Fuqua*, 228 F.Supp.2d at 756 n. 2 (emphasis added), the court did not propound a stringent standard for crafting an opposition brief. Here, the Response included a captioned section listing all material facts that the plaintiff claims demonstrate the inappropriateness of summary judgment. It is true that a party opposing summary judgment must show that a purportedly undisputed fact is controverted. Nonetheless, the court will not ignore the Response based on stylistic formalities when the plaintiff otherwise complied with the Federal Rules of Civil Procedure and the Local Civil Rules.

**6.** Allen Patrick ("Patrick"), Old Dominion's Secretary/Treasurer, was the only other employee to enter into a 1992 Agreement. At that time, the plaintiff and Patrick were the second and third highest paid employees at Old Dominion, respectively. Since the 1980s, only three other management-level employees at Old Dominion entered into similar agreements.

ment, the plaintiff (or designated beneficiary) was eligible to receive monthly benefit payments for 180 consecutive months upon: 1) retirement from Old Dominion at the age of sixty-five or older; 2) retirement due to permanent or indefinite disability; or 3) death, as long as he was employed by Old Dominion at the time of retirement or death. 1992 Agreement, Art. III(A)-(C), Am. Compl. Ex. 1, ECF No. 14-1. If the plaintiff sought to retire due to disability, he had to be deemed permanently or indefinitely disabled by a licensed physician chosen by Old Dominion. *Id.* at Art. I(A); [7] *see also id.* at Art. III(B). However, if the plaintiff's employment was terminated "for any reason other than death, disability, or retirement at age 65," he would receive no benefits under the 1992 Agreement and the Agreement would become "null and void." *Id.* at

Art. III(D). Old Dominion was not required to fund the plan and the plaintiff did not "have any lien nor right, title or interest in or to any specific funding investment or to any assets of [Old Dominion]." *Id.* at Art. IV.[8]

In 2006, the plaintiff began receiving treatment for various health problems, including depression and addictions to alcohol and pain medication.[9] The plaintiff confided in Ray about his health issues, and she met with him periodically to monitor his progress in dealing with his depression. Despite suffering from these health issues, the plaintiff never made any request to retire due to disability nor did he make any request for accommodations due to disability.[10] Similarly, the plaintiff never submitted any documentation regarding a disability or inability to work.[11] Old

7. The 1992 Agreement defines "Disability" as "[a] physical or mental injury, condition or impairment which, in the opinion of a licensed physician selected by the Company, renders the Executive incapable of performing the duties of his position and is likely to be of permanent or indefinite duration." 1992 Agreement, Art. I(A).

8. This court previously recognized that Old Dominion's general assets are the source of financing the plan. *Davis v. Old Dominion Tobacco Co. Inc.*, 688 F.Supp.2d 466, 470 (E.D.Va.2010). The plaintiff does not dispute that the plan does not designate a specific set of funds from which Old Dominion would be obligated to pay any benefits due. Rather, he highlights the undisputed fact that Old Dominion took out a life insurance policy on him at the time of execution of the 1992 Agreement, and, without citing any material in the record, "contends that the policy was intended to fund the [1992 Agreement]." Mem. in Opp. to Mot. for Summ. J. 24, ECF No. 52.

9. On January 10, 2007, the plaintiff met with Dr. Charles Parker, his treating psychiatrist. Dr. Parker and his staff noted that the plaintiff suffered from mental health problems, such as Major Depressive Affective Disorder, a recurrent problem, and Attention Deficit Hyperactivity Disorder.

10. The record is silent as to whether the plaintiff continued to work for the entire time he received treatment, though the plaintiff does claim that he was still a valuable employee while in treatment. He also claims that Ray told him, with regard to his health problems, "that it was okay, not to worry about it, and to take as much time as he needed to recover and complete medical treatment." *See* Am. Compl. ¶ 19, ECF. No. 14. Ray claims that she meant the plaintiff could take time "to see whatever doctors or whoever was going to treat him," and "[h]e did not bring us any information on treatment, nor expected time frame." Ray Dep. 75, Mem. in Opp. to Mot. for Summ. J. Ex. 1, ECF No. 52–1 [hereinafter "Ray Dep."].

11. The plaintiff does not dispute that he never requested to be examined by a licensed physician selected by Old Dominion prior to termination of his employment nor that such an examination never took place. He also does not dispute that Dr. Parker never was asked to prepare any documentation regarding a disability and/or need for accommodations. Dr. Parker indicates that patients request such notes "all the time," and he would have been willing to provide the plaintiff with such documentation upon request. *See* Parker Dep. 110, Mem. in Supp. of Mot. for Summ.

Dominion never sought to initiate any procedures to determine the plaintiff's eligibility to retire with benefits under the 1992 Agreement. On September 16, 2008, Old Dominion fired the plaintiff and allegedly replaced him with his brother, Phillip Davis.[12] At the termination meeting, Old Dominion's stated reason for firing the plaintiff was "poor performance of [his] job and excessive unaccounted absent days from [his] job." [13] *See* Acknowledgment of Termination, Mem. in Supp. of Mot. for Summ. J. Ex. 6, ECF No. 46–6,[14] At that time, the plaintiff was sixty-two years old.

On September 18, 2010, the plaintiff met with Allen Patrick ("Patrick") of Old Dominion and they decided that the plaintiff should request a severance package of $85,020.00. Within two weeks of that meeting, the plaintiff and his wife spoke in person to his wife's brother, an attorney, regarding the termination, the severance issues, and not receiving benefits under the 1992 Agreement.[15] On September 29, 2010, after meeting with his wife's brother, the plaintiff entered into a Separation and Release Agreement with Old Dominion ("2008 Document"), which provided the plaintiff $72,000 in severance pay, in exchange for his release of any and all claims against, among others, Old Dominion and Ray, including any obligations under the 1992 Agreement and/or any claims under the ADEA and ADA.[16] To date, he has

J. Ex. 4, ECF No. 46–4 [hereinafter "Parker Dep."].

**12.** Ray stated that the plaintiff "has not been replaced." Ray Dep. 154.

**13.** On two occasions in the year leading up to the firing, Ray told the plaintiff that he was not attending work regularly. At the time of the firing, Ray told the plaintiff that he had already missed fifty-two days of work in 2008 alone. The plaintiff does not dispute that statistic, and even stated that he thought Ray believed it to be true. *See* Davis Dep. 87, Mem. in Supp. of Mot. for Summ. J. Ex. 1, ECF No. 46–1 [hereinafter "Davis Dep."]. In muted disagreement, he highlights his own testimony that he was often out of the office on business matters. Mem. in Opp. to Mot. for Summ. J. 9, ECF No. 52 (citing Davis Dep. 45). However, the plaintiff does not dispute that he was inexcusably absent and he does not even allege that the defendants mistakenly believed him absent when he was instead out of the office on business matters. The plaintiff also points to material that suggests Ray told him to take as much time as he needed to recover. *See supra* note 10. However, he does not point to any evidence, let alone contend, that any of his fifty-two absences from work were attributable to doctor's visits or any other circumstance related to recovery. Moreover, he does not point to any evidence, let alone contend, that he provided Ray or anyone at Old Dominion with information suggesting that any of his absences were attributable to such a circumstance. Without such a showing, Ray's statement cannot reasonably be inferred to excuse fifty-two unexplained absences. In sum, the plaintiff does not present any evidence to support a genuine issue of fact regarding his absenteeism.

**14.** The plaintiff confirmed these bases by written acknowledgment. Acknowledgment of Termination, Mem. in Supp. of Mot. for Summ. J. Ex. 6, ECF No. 46–6. The Acknowledgment further provided that Ray would "consider a moderate separation package," and "if [one] is negotiated [the plaintiff] will be willing to sign a release." *Id.*

**15.** There is no dispute that this meeting took place. The plaintiff stated, "I wanted to make sure I should sign it or whatever, one of those agreements." Davis Dep. 74. However, he contends that his wife's brother did not provide any legal advice, and notes that his wife's brother practices in a different area of the law. *See* Mem. in Opp. to Mot. for Summ. J. 7–8.

**16.** *See infra* note 17 and accompanying text. Additionally, the 2008 Document advised the plaintiff to seek counsel, gave him twenty-one (21) days to review the Document before signing it, and gave him seven (7) days to revoke his signature and consent after signing it. The plaintiff never revoked his signature, and on the same day he signed the 2008 Document, he signed a written certification that we

not tendered, either in whole or in part, the $72,000 back to Old Dominion.

In Count I of the Amended Complaint, the plaintiff alleges that, at the time he was terminated, he was entitled to recover retirement benefits under the 1992 Agreement's disability provisions in the total amount of $639,253.13, paid over the course of 180 months. In Count II, he alleges that the defendants interfered with his right to collect under the 1992 Agreement. Specifically, he alleges that the defendants fired him with the specific intent to interfere with his right to collect benefits due under the 1992 Agreement, and, prior to signing the 2008 Document, Old Dominion representatives did not inform him that the 1992 Agreement had a disability provision and that he was eligible to retire and receive retirement benefits. To the contrary, the plaintiff alleges that the defendants fraudulently induced him into signing the 2008 Document by falsely representing that he was not entitled to any benefits under the 1992 Agreement, and that only if he signed the 2008 Document would he receive any compensation. Moreover, the plaintiff contends that at the time he executed the 2008 Document, his mental conditions had worsened and diminished his ability to understand the effect of signing the 2008 Document. Finally, in Count III, the plaintiff alleges that Ray and the Old Dominion Board of Directors are fiduciaries under ERISA, charged with the duty to ensure that the plaintiff receive disability benefits he may be entitled to under the 1992 Agreement; to inform the plaintiff that he may qualify for such benefits; and to inform him how to apply for and gain access to such benefits. The plaintiff argues that they breached that duty when they failed to inform

him he may qualify for disability benefits under the 1992 Agreement, fired him with knowledge that he was disabled, and fraudulently procured the 2008 Document. In all three counts, the plaintiff requests that the court enter an Order declaring the 2008 Document null and void.

In Count I of the ADEA/ADA Complaint, the plaintiff alleges that Old Dominion discriminated against him on account of his age by terminating him on the basis of his age and health before he had attained the age of retirement and while he had a disability. The plaintiff also claims that he was treated differently than other similarly situated younger employees and was replaced by a younger, less qualified employee. In Count II, the plaintiff alleges that Old Dominion discriminated against him on account of his disability by terminating his employment and refusing to make reasonable accommodations for him. He also claims that he was treated differently than other, non-disabled employees and that Old Dominion gave his job to a younger employee who was not disabled.

### Standard of Review

Summary judgment is appropriate when a court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.*, 763 F.2d 604, 610 (4th Cir. 1985). A party opposing a motion for summary judgment may not rest on the pleadings alone, but must instead show that "specific, material facts exist that give

---

was given 21 days "to consider the release of any claim under the [ADEA]" and chose "to execute the [2008 Document] prior to the

expiration of this period." 2008 Document, Mem. in Opp. to Mot. for Summ. J. Ex. 2, ECF No. 52–2.

rise to a genuine triable issue." *Hagan v. McNallen (In re McNallen)*, 62 F.3d 619, 623–24 (4th Cir.1995). In essence, the nonmovant must present evidence "on which a [trier of fact] could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Such facts must be presented in the form of exhibits and sworn affidavits. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir. 1993) ("A motion for summary judgment may not be defeated by evidence that is 'merely colorable' or 'is not sufficiently probative.'" (quoting *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505)).

On summary judgment, the court is not to "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). But a failure by a plaintiff to rebut a defendant's motion with sufficient evidence will result in summary judgment when appropriate. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *see also Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (finding district courts have an "affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." (citing *Celotex Corp.*, 477 U.S. at 323–24, 106 S.Ct. 2548)).

## Analysis

### I. Separation and Release Agreement

Before the court can address the substance of the Amended Complaint and the ADEA/ADA Complaint, it must determine whether the plaintiff adduces enough evidence to establish that the 2008 Document should not be enforced. The court addresses this issue first because the 2008 Document, by its terms, precludes the plaintiff from maintaining a suit on his claims. *See, e.g., Reighard v. Limbach Co., Inc.*, 158 F.Supp.2d 730, 733 n. 8 (E.D.Va.2001) (collecting cases indicating that an employee can waive existing claims under ERISA); *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 299–300, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (indicating that an employee can waive his ability to bring suit on an ADA claim in court); 29 U.S.C. § 626(f) (providing that an individual can waive rights or claims under the ADEA). The 2008 Document provides, in pertinent part:

> Mr. Davis ... hereby releases Atlantic Dominion, its subsidiaries and any affiliated or related companies, and their officers, stockholders, directors, employees, and agents ... of and from all manner of action and actions, cause and causes of action, suits, ... covenants, contracts, agreements, promises, damages, claims and demands of every kind or character whatsoever, whether presently known or unknown, suspected or unsuspected, under state or federal laws, which Mr. Davis now has against Atlantic Dominion, its subsidiaries and any affiliated or related companies, their officers, stockholders, directors, employees, and/or agents.... Specifically included in this release are any claims. in connection with the past employment relationship between the parties, including, but not limited to, claims for *deferred compensation* due, or to become due pursuant to

alleged breach of any previously executed contract, wrongful discharge, . . . the *Age Discrimination in Employment Act . . .*, and/or *any other federal or state law relating in any way to employment rights.*

2008 Document ¶ 7 (emphasis added).[17] The plaintiff does not dispute that the 2008 Document, by its terms, precludes him from maintaining a suit on all of his claims. Rather, he contends that the 2008 Document should not be enforced because the defendants, "fraudulently induced Plaintiff into signing the 2008 Document and release," Mem. in Opp. to Mot. for Summ. J. 4, ECF No. 52; *see also* Am. Compl. ¶ 29. The plaintiff also suggests that his "mental illnesses . . . diminished his ability to significantly understand the effect of executing the 2008 Document." *See, e.g.* Am. Compl. ¶ 23.

### A. ERISA and ADA Claims

 The court first addresses whether the 2008 Document should be enforced as regards the plaintiff's ERISA and ADA claims. Waiver of ADEA claims is governed by the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f), but there is no federal statute governing waiver of ERISA and ADA claims. In the absence of a controlling statute, federal courts generally enforce releases of federally protected rights in the employment context if the release was knowing and voluntary. *See, e.g., Kendall v. City of Chesapeake, Va.,* 174 F.3d 437, 441 n. 2 (4th Cir.1999); *see also Shirey ex rel. Kyger v. City of Alexandria School Bd.,* 229 F.3d 1143, 2000 WL 1198054 (4th Cir.2000) (per curiam) (unpublished table decision). However, there is no "generally-applicable body of federal common law principles . . . for determining whether releases of particular federal rights secured by specific provisions of federal law can be enforced," *Kendall,* 174 F.3d at 441 n. 1, and "courts can resolve interstitial questions of federal law . . . by adopting existing state law." *Id.* Accordingly, the court evaluates the plaintiff's proffered bases for setting aside his release of any ERISA and ADA claims under ordinary contract principles, and thus turns to Virginia law for guidance. *See id.; see also Rodriguez–Abreu v. Chase Manhattan Bank, N.A.,* 986 F.2d 580, 587 (1st Cir.1993); *Leavitt v. Nw. Bell Tel. Co.,* 921 F.2d 160, 162 (8th Cir.1990) ("To determine whether a release [of ERISA claims] is knowing and voluntary, we apply general principles of contract construction.").

 The plaintiff claims that the 2008 Document should be declared null and void on the ground that Ray and Patrick took calculated actions "designed to fraudulently obtain a release from Plaintiff." Mem. in Opp. to Mot. for Summ. J. 3; *see also id.* at 4–5, 11–15.[18] He claims fraud by both affirmative misrepresentation of material fact and by concealment of material fact.[19] *See id.* at 11–15. Specifically, he argues that Ray and Patrick falsely represented "that if he did not execute the document he would get nothing," Am.

---

**17.** The 2008 Document recites that Old Dominion "found it necessary to sever the employment relationship . . . due to work performance and absenteeism." 2008 Document ¶ B. The 2008 Document also provides that it does not constitute an admission or statement or wrongdoing or breach of contract, and that the plaintiff carefully reviewed its terms and executed it "of his own volition". 2008 Document ¶¶ 10–11; *see also supra* note 16.

**18.** The court evaluates a claim to set aside a contract due to misrepresentations and/or concealment of material fact under Virginia's law of fraud. *See, e.g., W. Capital Partners, LLC v. Allegiance Title & Escrow, Inc.,* 520 F.Supp.2d 777, 781–82 (E.D.Va.2007).

**19.** Plaintiff does not claim constructive fraud.

Compl. ¶ 25; *see also* Mem. in Opp. to Mot. for Summ. J. 4, and that Old Dominion representatives neither informed him that the 1992 Agreement had a disability provision nor that "he was eligible to retire and receive the majority of his retirement benefits under" that provision. Am. Compl. ¶ 24; *see also* Mem. in Opp. to Mot. for Summ. J. 14. In order to prove actual fraud on account of the defendants' purported misrepresentations, the plaintiff must show "(1) a false representation, (2) of a material fact, (3) made intentionally or knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *W. Capital Partners, LLC v. Allegiance Title & Escrow, Inc.*, 520 F.Supp.2d 777, 782 (E.D.Va.2007). Concealment, on the other hand, requires a showing of concealment of a material fact along with an intent to conceal. *See Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir.1999) ("Silence does not constitute concealment in the absence of a duty to disclose." (citations omitted)).

■ The plaintiff alleges that Ray and Patrick represented to him that he would not receive any money if he did not sign the 2008 Document because he was not eligible for any benefits under the 1992 Agreement. *See* Mem. in Opp. to Mot. for Summ. J. 10–15. As discussed below, the plaintiff did not adduce sufficient facts to raise a genuine issue that he was entitled to such benefits at the time he signed the 2008 Document.[20] Accordingly, he fails to raise a genuine issue as to whether any such representation was false. Additionally, the plaintiff fails to adduce enough facts upon which one could reasonably conclude that Ray and/or Patrick made any such representation with the intent to mislead. The plaintiff tries to obfuscate this deficiency by citing to, and misconstruing, im-

material parts of the record. As to Patrick, the plaintiff simply does not cite any part of the record from which one could reasonably infer the requisite intent. He merely offers that Patrick is in charge of Human Resources at Old Dominion and that Patrick was aware of the plaintiff's health issues and of the disability provision in the 1992 Agreement; he does not highlight any probative statements or documents. To the extent the plaintiff could even prove these innocuous facts at trial, they are insufficient to raise a triable issue regarding intent.

Beyond offering that Ray was aware of the plaintiff's health issues and the disability provision, the plaintiff seeks to indirectly prove Ray's intent by impeaching her credibility. He claims that Ray testified that she "had no part in adding language to a document that advised the Plaintiff that he was giving up all rights to his Deferred Compensation Agreement," but, according to Patrick, "Ray told Patrick 'to make sure to let [Plaintiff] know that that's off the table', referring to the Deferred Compensation Agreement." Mem. in Opp. to Mot. for Summ. J. 7 (quoting Patrick Dep. 42, Mem. in Opp. to Mot. for Summ. J. Ex. 3, ECF No. 52–3). The document that the plaintiff refers to is a handwritten note memorializing his September 18, 2010, meeting with Patrick. Mem. in Supp. of Mot. for Summ. J. Ex. 7, ECF No. 46–7. Other than a request for a severance package, the note only includes the following language, to which Patrick alone signed his name: "Jimmy Davis today stated to me that he knew the deferred compensation benefits is no longer in effect since he will not be working to age 65 years. He realizes that being released terminated this benefits." *Id.* Contrary to the plaintiff's characterization, this

20. *See infra* Part II.A.

document does not advise him that he was giving up his rights to benefits under the 1992 Agreement. To the extent the document advises him at all, it advises him that because he was fired, the 1992 Agreement, by its terms, is null and void.

Also contrary to the plaintiff's characterization, Ray did not testify that she had no part in adding language to the document. Rather, she testified "I don't know who asked him to put this paragraph in. He might have been asked by an attorney. I don't know." Ray Dep. 141. In sum, the plaintiff seeks to establish that Ray told Patrick to inform the plaintiff that, per the terms of the 1992 Agreement, Old Dominion would not be paying deferred compensation benefits and, nearly two years later and in the course of this litigation, Ray cannot remember telling Patrick to do so. If the court draws an inference from Ray's statements in the light most favorable to the plaintiff, the inference is that Ray is not a credible witness. However, this inference is not sufficiently probative of an intent to mislead the plaintiff into believing he was not owed benefits.[21] Even if the inference is sufficient to discredit any explanation Ray provides, Virginia law does not presume an intent to mislead, and, accordingly, the defendants do not bear a burden to disprove intent. Accordingly, since the plaintiff provides no indication that he can meet his burden, he fails to raise a genuine issue as to an element essential to setting aside the 2008 Document on the grounds of affirmative misrepresentation.

■ The plaintiff claims concealment by alleging that Ray and Patrick concealed the material fact that the 1992 Agreement had a disability provision and that the plaintiff was eligible to retire and receive the majority of his retirement benefits at the time the 2008 Document was executed. *See* Mem. in Opp. of Mot. for Summ. J. 14 ("Ray and Patrick were aware of the disability clause and intentionally omitted any mention of it when talking to Plaintiff."). The defendants do not dispute that Ray and Patrick did not mention the disability provision. However, the plaintiff does not cite to any statement or document that reveals that Ray and Patrick were themselves aware of the disability provision at the relevant times, such that one could entertain that they could intentionally conceal its existence. *See Bank of Montreal,* 193 F.3d at 827 (noting that "concealment requires a showing of intent to conceal a material fact; reckless nondisclosure is not actionable" (citations omitted)). Nevertheless, there is a genuine issue that Ray, but not Patrick, was aware of the provision, as Ray signed the 1992 Agreement. "In the absence of fraud, duress, or mutual mistake, a person having the capacity to understand a written document who reads it, *or,* without reading it or having it read to him, *signs it,* is bound by his signature." *Metro Realty of Tidewater, Inc. v. Woolard,* 223 Va. 92, 286 S.E.2d 197, 200 (1982) (emphasis added) (internal quotation marks and citation omitted). However, this principle dooms the plaintiff's concealment claim because he too signed the 1992 Agreement, *see* 1992 Agreement 9; Davis Dep. 70 ("I signed it."), and he does not even allege fraud, mutual mistake, or duress at the time the 1992 Agreement was executed. He also does not even allege that he lacked the ability to understand a written document at that time. Moreover,

---

**21.** Moreover, the plaintiff cites Ray's testimony in support of the proposition that "Ray did not believe that Plaintiff was entitled to any benefits under the Deferred Compensation Agreement." Mem. in Opp. to Mot. For Summ. J. 7. It is difficult to envision how the plaintiff might prove an intent to mislead when he concedes that the alleged misleading party believed her statement was factually accurate.

the plaintiff admits that he kept a copy of the 1992 Agreement, and that he took the copy from his office after he was fired, but prior to signing the 2008 Document. *See* Davis Dep. 71–72. Accordingly, the plaintiff fails to raise a genuine issue that the disability provision was a fact that was concealed from him.

The plaintiff also fails to adduce enough facts to establish that Ray and Patrick concealed that he was eligible for benefits under the 1992 Agreement at the time he was fired. At a threshold level, the court reiterates that the plaintiff offers no evidence that Ray and Patrick were aware of the disability provision at the relevant times, such that it is plausible that they could intentionally conceal his eligibility under that provision at the time he was fired. The court reiterates too that there nevertheless is a genuine issue that Ray, but not Patrick, was aware of the provision. However, it is indisputable that, by the term of the 1992 Agreement, the plaintiff was ineligible for benefits once he was terminated "for any reason other than death, disability, or retirement at age 65." 1992 Agreement, Art. III(D). Additionally, the plaintiff offers no evidence that Ray was aware that he was eligible at the time he was fired. He only offers that "Ray was aware of plaintiff's drug and alcohol problems and the fact that he was seeking treatment for mental issues related to those problems." Mem. in Opp. to Mot. for Summ. J. 6. This one fact fails to raise a genuine issue for several independent reasons. First, eligibility must be determined under the terms of the 1992 Agreement, and it is undisputed that a licensed physician selected by Old Dominion never deemed the plaintiff disabled.[22] Accordingly, the plaintiff could not prove that Ray knew that he was eligible.[23] Second, as discussed below, Ray did not have a fiduciary duty to inform the plaintiff that he may be eligible for benefits under the 1992 Agreement.[24] Third, in his Response, the plaintiff lists as a material fact that "Ray did not believe that Plaintiff was entitled to any benefits under the Deferred Compensation Agreement." Mem. in Opp. to Mot. for Summ. J. 7. One could not reasonably infer that Ray intentionally concealed a fact that she did not believe existed.

■ It is unclear if the plaintiff seeks to have the 2008 Document declared null and void on the alternative ground of incompetence.[25] Even if the plaintiff's diminished capacity allegation amounts to an incompetence claim, though, he fails to present enough facts upon which a trier of fact could reasonably find he was incom-

---

**22.** *See supra* notes 7 and 11 and accompanying text.

**23.** *See supra* note 11 and accompanying text; *see also infra* Part II.A (finding that plaintiff fails to raise a genuine issue that he would have been deemed eligible but for being fired); Part II.B (finding that plaintiff fails to raise a genuine issue that the defendants possessed the specific intent to fire him in order to interfere with his rights under the 1992 Agreement).

**24.** *See infra* Part II.C (finding that the 1992 Agreement is not subject to ERISA's fiduciary requirements).

**25.** The Response presents "Material Facts Regarding the Fraudulent Procurement of the 2008 Document" and "Material Facts in Regarding [sic] the Opinions of Dr. Parker." *See* Mem. in Opp. to Mot. for Summ. J. 7–9. However, the plaintiff does not directly address the merits of the defendants' argument that he failed to raise a genuine issue of incompetence at the time the 2008 Document was executed. Rather, the plaintiff argues that he "is not required to prove incompetence in order for the 2008 Document to be set aside. Plaintiff contends the misrepresentation of the defendants fraudulently induced Plaintiff into signing the 2008 Document." *Id.* at 10.

petent at the time he signed the 2008 Document. Under Virginia law, a person is presumed to be competent to enter into a contract, and a person seeking to avoid a contract on the grounds of incompetence bears the burden of proving his incompetence by clear and convincing evidence. *See, e.g., Bailey v. Bailey,* 54 Va.App. 209, 677 S.E.2d 56, 59 (Va.Ct.App.2009). Accordingly, the plaintiff must show that, at the time he signed the 2008 Document, he had insufficient mental capacity to understand the nature of the transaction and to consent to its terms. *Id.* The plaintiff does not allege that he lacked the capacity to consent to the 2008 Agreement, but he does aver that he had diminished capacity to significantly understand the effect of executing it.

Even if such a fact could prove incompetence, the plaintiff has no admissible evidence to establish it. *See Toll Bros., Inc. v. Dryvit Sys., Inc.,* 432 F.3d 564, 568 (4th Cir.2005) ("Summary judgment is warranted when the admissible evidence forecasted by the parties demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." (internal quotation marks and citation omitted)); *see also* Fed. R. Civ. P. 56(c). The plaintiff's diminished capacity claim depends entirely on the expert testimony of Dr. Charles Parker; the plaintiff offers no other evidence to establish it. *See* Mem. in Opp. to Mot. for Summ. J. 8–9, 16, 18. However, this evidence is inadmissible at trial because the court granted the defendants' motion in limine to preclude Dr. Parker from testifying in regard to the plaintiff's capacity to understand the significance of signing the 2008 Document. Order, ECF No. 66. Because the plaintiff offers no evidence to rebut the presumption of competence, he necessarily fails to raise a genuine issue of material fact regarding his competence to sign the 2008 Document. *See Bailey,* 677 S.E.2d at 59–60 ("A party with sufficient mental capacity cannot disaffirm the agreement no matter how 'ill-reasoned or ill-advised' it might be" (quoting *Drewry v. Drewry,* 8 Va.App. 460, 383 S.E.2d 12, 16 (Va.Ct.App.1989))).

### B. ADEA Claim

■ Having found that the 2008 Document precludes the plaintiff from bringing his ERISA and ADA claims, the court turns to the enforceability of the 2008 Document as regards waiver of any ADEA claims. Waiver of ADEA claims is governed by the OWBPA. *See Oubre v. Entergy Operations, Inc.,* 522 U.S. 422, 427, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998) (holding that a "release can have no effect on [an] ADEA claim unless it complies with the OWBPA"). Like ERISA and ADA waivers, a waiver of ADEA claims must be knowing and voluntary. 29 U.S.C. § 626(f)(1). The OWBPA provides baseline requirements that a waiver must satisfy in order to be considered knowing and voluntary:

(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;

(B) the waiver specifically refers to rights or claims arising under this chapter;

(C) the individual does not waive rights or claims that may arise after the date the waiver is executed;

(D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual is already entitled;

(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;

(F)(i) the individual is given a period of at least 21 days within which to consider the agreement; ...

(G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired; ....

*Id.*

There is no dispute that the 2008 Document complies with subparagraphs (B), (C), (E) and (G), and the court finds that it complies in those respects. The 2008 Document specifically references the ADEA, as required by subparagraph (B). 2008 Document ¶ 7. The plaintiff only waived claims that he "now has against Atlantic Dominion," as required by subparagraph (C). *Id.* In compliance with subparagraph (E), the plaintiff "represent[ed] and warrant[ed]" that he was advised in writing of his right to consult an attorney before signing.[26] *Id.* ¶ 13; *see also Metro Realty of Tidewater*, 286 S.E.2d at 200. Finally, the 2008 Document provides that "Mr. Davis shall have seven (7) days after the execution of this Agreement within which to revoke his signature and consent to this Agreement," as required by subparagraph (G). *Id.* ¶ 14; *see also* Davis Dep. 83.

■ The plaintiff claims there is a genuine issue of material fact that he "was never afforded the 21 days to review the 2008 Document as evidenced by the waiver that defendants had him sign." Mem. in Opp. to Mot. for Summ. J. 8. Whether the plaintiff was given twenty-one days is a material fact, but the plaintiff fails to prove there is a genuine issue because the only evidence he cites proves that Old

Dominion complied with the OWBPA. Under the OWBPA, the operative consideration is whether the plaintiff was given twenty-one days to consider the agreement, not whether he actually availed himself of that opportunity. *See* 29 U.S.C. § 626(f)(1)(F)(i). The waiver the plaintiff refers to is, in reality, a certification, and it provides, "By my signature below, I certify that *I was given 21 days to consider the release of any claim under the [ADEA]* and that I have chosen to execute this Agreement prior to the expiration of this period."[27] 2008 Document 5 (emphasis added). This does not settle the issue, though, because the plaintiff also asserts that "the evidence shows that Ray and Patrick exerted their influence over Plaintiff to get him to waive the twenty-one (21) days and sign the document immediately." Mem. in Opp. to Mot. for Summ. J. 14–15. If the plaintiff could prove that Ray and Patrick fraudulently induced him into forgoing the opportunity to exercise his statutory right, he might survive summary judgment. *Cf. Neely v. Good Samaritan Hosp.*, 345 Fed.Appx. 39, 44 (6th Cir.2009) (per curiam) (finding that a release of ADEA claims must not only include language giving the employee the requisite statutory right, but the employee "must also be given the opportunity to exercise that right"). However, he does not direct the court to any supportive evidence. In the absence of any support in the record, he cannot survive summary judgment. The record only supports the conclusion that the plaintiff properly exercised his right to review the 2008 Document for twenty-one days by "chos[ing] to execute this Agreement prior to the expiration of this period." 2008 Document 5.

---

26. *See supra* note 15 and accompanying text.

27. The plaintiff also "represent[ed] and warrant[ed] ... that Atlantic Dominion has given Mr. Davis a period of twenty-one (21) days within which to consider this Agreement." 2008 Document ¶ 13.

The plaintiff does not specifically dispute that the 2008 Document complies with subparagraphs (A) and (D). In regards to subparagraph (A), there is no dispute that the 2008 Document is an agreement between the plaintiff and Old Dominion. The plaintiff contends that he did not understand the full significance of signing the 2008 Document, but he bases this allegation on diminished capacity, not any defect in the manner in which it was written. *See* 29 U.S.C. § 626(f)(1)(A). Moreover, to the extent a diminished capacity is probative of whether subparagraph (A) is met, the court already noted that the plaintiff presents no admissible evidence to establish that fact.[28] In the absence of any evidence that the 2008 Document was written in a manner not calculated to be understood by the plaintiff "or by the average individual eligible to participate," *id.*, there is no genuine issue that the 2008 Document complies with subparagraph (A).

In regards to subparagraph (D), there is no dispute that the plaintiff received $72,000 for executing the 2008 Document. *See, e.g.,* 2008 Document ¶ 2. In the ADEA/ADA Complaint, the plaintiff states that he "signed the 2008 Document for inadequate consideration." ADEA/ADA Complaint ¶ 25. However, he never supports, let alone renews, this allegation in his Response. Accordingly, there is no genuine issue that the plaintiff waived his ADEA claims in exchange for consideration. It is also undisputed that the $72,000 did not constitute anything of value to which the plaintiff was already entitled at the time he signed the 2008 Document. The plaintiff contends that he was entitled to benefits under the 1992 Agreement at the time he signed the 2008 Document, but he does not offer any evidence,

let alone contend, that the $72,000 represented a portion of those benefits; the $72,000 consideration was indisputably "in addition" to any benefits. Furthermore, as discussed below, the plaintiff fails to raise a genuine issue that he was entitled to benefits under the 1992 Agreement at the relevant times.[29] Accordingly, there is no genuine issue that the 2008 Document constitutes a valid waiver of any ADEA claim the plaintiff had at the time he was fired.

The plaintiff cannot prove that his waiver of any rights or claims under the ADEA, ADA and ERISA was anything but knowing and voluntary, and, therefore, valid. Accordingly, he is precluded from maintaining suit on his claims, and the court **FINDS** that the defendants are entitled to judgment as a matter of law. In consideration of the interplay between the above analysis and the substantive merit of the plaintiff's claims, the court will go forward and address whether "specific, material facts exist that give rise to a genuine triable issue" on his claims. *In re McNallen,* 62 F.3d at 623–24.

## II. Amended Complaint

### A. Recovery of Benefits Under the 1992 Agreement

■■■ Count I of the Amended Complaint is predicated on the allegation that the plaintiff is owed benefits by the terms of the 1992 Agreement. In order to prove entitlement to those benefits, the plaintiff must show that he is a participant or beneficiary of an ERISA plan, *see* 29 U.S.C. § 1132(a)(1)(B), and that he has met the definition of "disability" under the terms of the 1992 Agreement.[30] *See e.g., Gallagher*

---

28. *See supra* at 24–25.

29. *See infra* Part II.A.

30. There is no dispute that the plaintiff is a participant or beneficiary of the 1992 Agreement, and the court has already determined

*v. Reliance Standard Life Ins. Co.,* 305 F.3d 264, 270 (4th Cir.2002). When the court denied the defendants' Motion to Dismiss Count I of the Amended Complaint, it reaffirmed that the essence of the plaintiff's claim was not that he was directly denied benefits, but that he was "prevented ... from meeting the procedural conditions necessary to obtain benefits under the ERISA plan ..." and those benefits *"would have been due under the 1992 Agreement had he not been terminated prior to seeking those benefits."* Mem. Op. and Order at 4–6, ECF No. 32 (emphasis in original) (quoting Mem. Op. and Order at 11, 13, ECF No. 13).[31] Although "it would be anomalous to dismiss the first Count ... despite plaintiff's claim that he can prove his entitlement to benefits under the terms of the plan," *id.* at 6, at the summary judgment phase, claims alone no longer suffice. *See In re McNallen,* 62 F.3d at 623–24. The plaintiff satisfied his pleading burden under Federal Rule of Civil Procedure 8(a)(2) on the earlier motion to dismiss, but he does not meet his burden to show a genuine issue for trial under Rule 56.

In order to survive summary judgment, the plaintiff must demonstrate that a trier of fact could reasonably find that he was entitled to disability benefits under the 1992 Agreement at the time he was fired. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. As such, he must point to sufficient evidence in the record that shows but for being fired, he would have been deemed "disabled" by a licensed physician selected by Old Dominion;[32] he cannot survive summary judgment by merely showing that but for being fired, he *might* have received benefits.[33] Accordingly, since the plaintiff only seeks to prove a genuine issue as to whether he had a mental condition or impairment, he did not go far enough to demonstrate a genuine issue of material fact as to Count I.

The plaintiff does not cite to any part of the record that supports a finding that if procedures were initiated to determine his eligibility under the 1992 Agreement, then a licensed physician selected by Old Dominion would have found him disabled. Rather, he points to material that he claims shows Dr. Parker, Ray, and Patrick believed that the plaintiff had health issues. *See, e.g.,* Mem. in Opp. to Mot. for

that the 1992 Agreement is an ERISA plan. *See* Mem. Op. and Order at 6–7, ECF No. 13.

**31.** In other words, the plaintiff claims that "but for the defendants' conduct, [he] would have been deemed 'disabled,' as defined under the 1992 Agreement, and, knowing this, the defendants terminated him before he was able to initiate such procedures." Mem. Op. and Order at 6, ECF No. 32.

**32.** *See supra* note 7.

**33.** *See supra* note 31 and accompanying text. Whether the plaintiff might have been entitled to benefits under the 1992 Agreement is a material fact as regards his claim for interference with ERISA-protected rights. *See* 29 U.S.C. § 1140 (deeming it unlawful to fire a plan participant "for the purpose of interfering with the attainment of any right to which such participant *may become* entitled" (em-

phasis added)). However, it is immaterial to the plaintiff's claim that but for the defendants' actions, he *would* have received benefits under the terms of the plan itself. The court will not collapse two different provisions of ERISA into one. Congress's decision to provide a separate cause of action in 29 U.S.C. § 1140 for purposeful interference necessarily precludes one from reading 29 U.S.C. § 1132 as providing for the same enforcement mechanism. *See U.S. v. Ryan–Webster,* 353 F.3d 353, 366 (4th Cir.2003) (discussing an "interpretive canon" known as the rule against superfluity, in which courts must avoid any interpretation of statutory provisions and words which render them superfluous); *see also Conkwright v. Westinghouse Elec. Corp.,* 933 F.2d 231, 237 (4th Cir.1991).

Summ. J. 19–20.[34] Such evidence is consistent with an inference that others might formulate the same opinion. However, this material is merely colorable and, therefore, insufficient for two reasons. First, the inference it creates does not prove the essential element of the claim because it is not enough that a licensed physician selected by Old Dominion might diagnose the plaintiff with the purported health issues. By the terms of the 1992 Agreement, entitlement for benefits only vests if a licensed physician selected by Old Dominion held the opinion that those health issues rendered the plaintiff "incapable of performing the duties of his position and [those issues are] likely to be of permanent or indefinite duration." 1992 Agreement, Art. I(A); *cf. Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 821–22 (4th Cir.1995) ("While the summary judgment standard requires us to resolve conflicting inferences from circumstantial evidence in favor of the non-moving party, it does not allow us to ignore or distort the plain meaning of words or conveniently to read them out of context." (citations omitted)).

Second, even assuming the inference, in isolation, suggests that a licensed physician selected by Old Dominion would have found that the plaintiff was disabled in September 2008, "respondents must show that the inferences they suggest are 'reasonable in light of the competing inferences.'" *M & M Med. Supplies*, 981 F.2d at 163 (quoting *Matsushita Elec.*, 475 U.S. at 588, 106 S.Ct. 1348). The competing inference is that a physician selected by Old Dominion might find the plaintiff was not disabled. Unlike the plaintiff's inference, this inference is directly supported by undisputed facts in the record. *See Sylvia Dev. Corp.*, 48 F.3d at 810 ("Whether an inference is reasonable cannot be decided in a vacuum[.]" (citations omitted)). Pursuant to this court's August 6, 2010 Order, the plaintiff underwent a mental examination with Dr. Jerome Blackman, a physician the plaintiff admits was selected by Old Dominion. Dr. Blackman was of the opinion that the plaintiff did not have a disability, by any definition, in September 2008.[35] The plaintiff has to show that he is entitled to the inference that another physician selected by Old Dominion would have nonetheless deemed him

34. Although the plaintiff's expert, Dr. Parker, can testify to the plaintiff's health issues and the general impact of them, he is specifically precluded from testifying that the plaintiff was disabled and incapable of performing the duties of his position at the time he was fired. *See* Order, ECF No. 66.

35. The plaintiff does not dispute Dr. Blackman's diagnosis, but rather argues that "a Treating Physician should be given greater deference in ERISA conflict of interest cases." Mem. in Opp. to Mot. for Summ. J. 16. In support of that contention, he points the court to *Davidson v. Kemper Nat'l Services, Inc.*, 231 F.Supp.2d 446 (W.D.Va.2002). However, his argument and *Davidson* are completely inapposite. Foremost, Dr. Parker will not testify that the plaintiff was disabled at the time he was fired. *See* Order, ECF No. 66. Additionally, in *Davidson*, the district court was reviewing a plan administrator's decision to

deny benefits under ERISA, whereas here, there is no decision to review. Although this is reason enough to ignore *Davidson*, the court also notes that the disability clause at issue in *Davidson*, unlike the clause at issue here, did not link a disability finding to the opinion of a licensed physician selected by the Company. Moreover, the *Davidson* court specifically noted that the "the Fourth Circuit has yet to formally decide whether the 'Treating Physician's Rule,' ... should be used in ERISA cases." *Davidson*, 231 F.Supp.2d at 454. Finally, the Fourth Circuit noted that the Treating Physician's Rule "only requires an award of benefits based upon a treating doctor's opinion of disability *absent persuasive contradictory evidence*," *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 607 (4th Cir.1999), and here, such persuasive contradictory evidence exists.

disabled. He makes no such showing.[36] The Response fails to identify evidence in the record that supports the essential element of his claim. He adduces no evidence that would allow a trier of fact to find that a physician selected by Old Dominion would have deemed him disabled under the terms of the 1992 Agreement. Accordingly, the plaintiff fails to show that there is a genuine issue suitable for trial.

### B. Interference with ERISA–Protected Rights

■■■ Count II of the Amended Complaint is predicated on the allegation that the defendants fired the plaintiff and procured the 2008 Document for the purpose of avoiding paying the plaintiff benefits under both the disability benefits and normal retirement benefits provisions of the 1992 Agreement, in violation of 29 U.S.C. § 1140. In order to prove that the defendants interfered with protected rights by firing him, the plaintiff must show: (1) he was fired; (2) Old Dominion fired him for the purpose of interfering with his benefits under the 1992 Agreement; and (3) he had a vested right to benefits under the 1992 Agreement or that he may have become so entitled but for the firing. *See, e.g., Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 236–39 (4th Cir.1991). It is undisputed that the plaintiff was fired and that but for the firing, upon reaching sixty-five years of age he would have been entitled to retire with benefits. The court need not determine whether there is a genuine issue of material fact as to whether he might have become entitled to dis-

ability benefits, because it is clear that he fails to make a showing sufficient to establish the existence of the second element.[37]

■■■ As the Fourth Circuit first pronounced in *Conkwright*, "to take advantage of [29 U.S.C. § 1140], one must prove a specific intent of the employer to interfere with an employee's pension rights." *Id.* at 239. Of course, a plaintiff can meet his burden either through direct or indirect proof. Additionally, due to proof problems similar to Title VII cases, the Fourth Circuit in *Conkwright* adopted the *McDonnell Douglas* scheme of presumptions and shifting burdens of production in interference cases predicated on an alleged discriminatory firing. *See* 933 F.2d at 239; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under that scheme, the plaintiff must make a *prima facie* case of discrimination, then the burden shifts to the defendants to articulate a legitimate, non-discriminatory reasons for firing the plaintiff. *See, e.g., Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir. 2000) (citations omitted). If the defendants meet their burden, then the plaintiff bears the ultimate burden to prove that the defendants' stated reason is pretext. *Id.*

■■■ The court can assume, without deciding, that the plaintiff established a triable issue regarding his *prima facie* case because it is clear that he did not present evidence upon which a trier of fact could reasonably find that the defendants' stated

---

**36.** The court is not weighing the persuasiveness of Dr. Blackman's opinion against Dr. Parker's opinion and any statements made by Old Dominion employees. The operative consideration at summary judgment is whether the plaintiff has shown that those materials would allow a trier of fact to reasonably infer that a licensed physician selected by Old Dominion would have considered him disabled

in September of 2008 in light of the competing inference and the undisputed fact that a licensed physician selected by Old Dominion did not find that he was disabled.

**37.** The plaintiff fails to raise a genuine issue that he had a vested right to disability benefits at the time he was fired. *See supra* Part II.A.

reason of poor job performance and excessive unaccounted absent days is mere pretext. The plaintiff claims that "Ray did not want Plaintiff to qualify for his Deferred Compensation for the simple reason that she would personally benefit." Mem. in Opp. to Mot. for Summ. J. 4. The gravamen of this allegations is that, as the owner of Old Dominion stock, "for every one dollar ($1.00) [Old Dominion] saved, [Ray] benefits personally." *Id.* The plaintiff cannot defeat a motion for summary judgment with this allegation. He does not cite any evidence indicating that Ray was seeking to benefit personally from the firing, and the mere fact that Old Dominion saved money by firing the plaintiff is insufficient to demonstrate that the defendants' stated reason is pretext. *See Conkwright,* 933 F.2d at 239; *see also Wright v. Sears, Roebuck and Co.,* 81 Fed.Appx. 37, 45 (6th Cir.2003) ("Proximity to vesting and a showing of cost savings is not sufficient, standing alone, to entitle plaintiff to a trial.").

The plaintiff's other proffers also fail to rebut the defendants' stated legitimate, non-discriminatory reason for firing him. He cites his own testimony that "he was often out of the office on calls or on the street meeting with customers or potential customers," Mem. in Opp. to Mot. for Summ. J. at 9 (citing Davis Dep. 45), but he never disputes that he missed fifty-two days of work in 2008 before September 16, 2008, that Ray believed he missed that many days at the time she fired him, and that those absences were not excused.[38] This testimony does not provide a basis for a trier of fact to reasonably infer that Ray harbored the specific intent to interfere with the plaintiff's ERISA-protected rights. The plaintiff also cites to Ray's testimony that the plaintiff is not entitled to any benefits because he was fired prior to reaching the age of sixty-five, and to her testimony that suggests she was aware of the plaintiff's health issues. However, these facts are too innocuous to reasonably infer the requisite intent by the path of pretext. *See Conkwright,* 933 F.2d at 239; *see also Wright,* 81 Fed.Appx. at 45. Under such reasoning, anytime an employer fires an employee prior to the age of retirement, or anytime an employer fires an employee with a known health issue, for excessive unexcused absences, the employer's action would be suspect. A trier of fact could not reasonably infer that the defendants' stated reason is pretext based simply on the fact that the defendants knew the plaintiff had health issues and that the plaintiff would be eligible to retire with benefits under the 1992 Agreement at age sixty-five. *See M & M Med. Supplies,* 981 F.2d at 163.

Instead of pointing the court to material facts that demonstrate the defendants' stated reason is mere pretext, the plaintiff sets forth an incongruous argument that the court should apply a modified abuse of discretion standard of review as set out in *Doe v. Group Hospitalization & Medical Serv.,* 3 F.3d 80 (4th Cir.1993), and "scrutinize[ ] to a higher degree" Ray's decision to fire the plaintiff. Mem. in Opp. to Mot. for Summ. J. 22. *Doe* is not pertinent to an ERISA interference claim. The *Doe* plaintiff was challenging a plan administrator's decision to deny him coverage, pursuant to 29 U.S.C. § 1132; there was no interference claim, pursuant to 29 U.S.C. § 1140. The plaintiff fails to even address the *McDonnell Douglas* scheme. He misapprehends the defendants' burden, and incorrectly claims that the "defendants must have more substantial evidence to support [its firing] decision" than "handwritten notes that allegedly documented

---

**38.** *See supra* note 13.

Plaintiff's numerous absences from work." *Id.* at 22–23. Under the *McDonnell Douglas* scheme, it is the plaintiff who must make a evidentiary showing that casts doubt on the defendants' stated legitimate, non-discriminatory basis for firing the plaintiff, and as stated, the plaintiff fails to make any such showing. Accordingly, he has not met his burden to show that there is a genuine issue suitable for trial.

 The plaintiff also claims that the defendants interfered with his rights under ERISA when he and Old Dominion executed the 2008 Document. As a threshold matter, 29 U.S.C. § 1140 does not proscribe release agreements, no matter the employer's specific intent. That Code provision states that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant" for the purpose of interfering with ERISA-protected rights. The plaintiff does not offer any basis to construe those six actions as embracing the execution of a release agreement. Nonetheless, even if that provision implicates the 2008 Document, the plaintiff's claim fails as a matter of law.

In order to prove that the defendants interfered with protected rights by executing the 2008 Document, the plaintiff must show: (1) Old Dominion executed the 2008 Document with him; (2) Old Dominion did so for the purpose of interfering with his benefits under the 1992 Agreement; and (3) he had a vested right to benefits under the 1992 Agreement or he may have become so entitled but for signing the 2008 Document. *See, e.g., Conkwright,* 933 F.2d at 236–39. Having already found that the plaintiff fails to show that there is a genuine issue that he was fired in order to interfere with ERISA-protected rights and that he would have received benefits

under the 1992 Agreement but for his firing,[39] the court need not dwell long on this claim. By the terms of the 1992 Agreement, "[s]hould the [plaintiff's] services for [Old Dominion] be terminated for any reason other than death, disability or retirement at age 65, all of the [plaintiff's] benefits under this Agreement shall be *forfeited* and this Agreement shall become *null and void.*" 1992 Agreement, Art. III(D) (emphasis added). In other words, the plaintiff was unequivocally foreclosed from collecting benefits under the 1992 Agreement in the event he was fired from his job. It is undisputed that he was fired from his job, thus, at the time he signed the 2008 Document, he had neither a vested right to benefits under the 1992 Agreement nor might he have become so entitled but for signing the 2008 Document. Accordingly, the plaintiff cannot raise a triable issue on the third element of the interference proof, and his claim fails as a matter of law.

### C. Breach of Fiduciary Duty

 The third count of the Amended Complaint is predicated on the allegation that Ray and the Old Dominion Board of Directors are fiduciaries under ERISA, 29 U.S.C. § 1002(21)(A), and they breached their fiduciary duty, in violation of 29 U.S.C. §§ 1104 and 1109, thereby authorizing the plaintiff to bring a claim pursuant to 29 U.S.C. § 1132(a)(2). In order to survive summary judgment, the plaintiff must make the threshold showing that there is a genuine issue that the 1992 Agreement is subject to ERISA's fiduciary requirements. The defendants contend that there is no genuine issue that the 1992 Agreement is exempt from ERISA's fiduciary requirements because the undisputed facts show it is a "top-hat" plan. A top-hat plan refers to "a plan which is unfunded

---

39. *See supra* Part II.A.

and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1101(a)(1). Top-hat plans are exempt from the substantive requirements of ERISA, including fiduciary requirements,[40] *id.*, "because 'Congress recognized that certain individuals, by virtue of their position or compensation level, have the ability to affect or substantially influence, through negotiation or otherwise, the design and operation of their deferred compensation plan … and, therefore, [do] not need the substantive rights and protections of Title I.'" *Carr v. First Nationwide Bank*, 816 F.Supp. 1476, 1491 (N.D.Ca.1993) (quoting U.S. Dep't of Labor ERISA Op. 90–14A). Accordingly, in addition to the two explicit statutory requirements, *see* 29 U.S.C. § 1101(a)(1), several courts recognize a third requirement: that employees participating in the alleged top hat plan have sufficient influence within the company to negotiate compensation agreements that will protect their interests where ERISA provisions do not apply. *See Guiragoss v. Khoury*, 444 F.Supp.2d 649, 658–59 (E.D.Va.2006) (citations omitted); *but see Alexander v. Brigham and Women's Physicians Org., Inc.*, 513 F.3d 37, 46–47 (1st Cir.2008) (declining to follow those courts that recognize a bargaining power requirement).

 There is no genuine issue that the plan is unfunded.[41] In determining whether a plan is unfunded, a court asks whether "the beneficiary [can] establish, through the plan documents, a legal right any greater than that of an unsecured creditor to a specific set of funds from which the employer is, under the terms of the plan, obligated to pay the deferred compensation." *Guiragoss*, 444 F.Supp.2d at 659–60 (quoting *Demery v. Extebank Deferred Compensation Plan (B)*, 216 F.3d 283, 287 (2d Cir.2000)). The plaintiff cannot do so. Without citing to plan documents or any support in the record, he merely claims that Old Dominion intended to fund the 1992 Agreement with a life insurance policy on his life.[42] Unsupported allegations cannot defeat a summary judgment motion, and the plain language of the 1992 Agreement shows that the plaintiff "remain[s] simply a general creditor of the Company in the same manner as any other creditor having a general claim for matured and unpaid compensation." 1992 Agreement, Art. IV.

The plaintiff does not dispute that the 1992 Agreement meets the second requirement, and the undisputed facts support a finding that it does. The 1992 Agreement was negotiated in an effort to retain a select group composed of management *and* highly compensated employees—the plaintiff and Patrick.[43] There is no genuine issue that the plaintiff, a Vice–President, and Patrick, a Secretary/Treasurer, were high-level employees nor that they were the second and third highest paid employees at Old Dominion, respectively. Accordingly, the second requirement is satisfied.

Although the plaintiff argues the third requirement is not met, his argument is misguided, and he does not cite to any evidence that demonstrates a genuine issue of material fact. Citing to his own

---

**40.** Top-hat plans are not exempt from ERISA's reporting,' disclosure, administration and enforcement provisions. *See, e.g., Guiragoss v. Khoury*, 444 F.Supp.2d 649, 658 n. 10 (E.D.Va.2006) (citations omitted).

**41.** *See supra* note 8 and accompanying text.

**42.** *See supra* note 8.

**43.** *See supra* note 6; *see also* 1992 Agreement, Preamble.

testimony, he argues that the 1992 Agreement was drafted by the defendants and given to him with no opportunity to negotiate changes. Mem. in Opp. to Mot. for Summ. J. 25 (citing Davis Dep. 71). He avers that because he took no part in negotiating the 1992 Agreement, he "had no opportunity to negotiate the Agreement to protect his own interests." *Id.* However, this line of reasoning is off the mark because the material fact is overall ability, not the presentation of an opportunity. Restated, the issue is whether the plaintiff had sufficient influence within the company to negotiate an agreement that would protect his interests where ERISA provisions do not apply; it is immaterial that he did not, in fact, negotiate the 1992 Agreement.[44] *See Demery,* 216 F.3d at 289. The plaintiff was a Vice–President, a high level executive assumed to possess a favorable bargaining position to negotiate the terms of a deferred compensation agreement. He does not offer any evidence that suggests insufficient bargaining power. *See id.* at 290.

The plaintiff fails to make the threshold showing that there is a genuine issue that the 1992 Agreement is subject to ERISA's fiduciary requirements. Accordingly, since he cannot show that Ray and the Old Dominion Board of Directors were subject to any fiduciary duty under ERISA, his claim fails as a matter of law.

## III. ADEA/ADA Complaint

### A. ADEA Claim

 Count I of the ADEA/ADA Complaint is predicated on the allegation that Old Dominion violated the ADEA by firing the plaintiff on the basis of his age and health three years before retirement and while he was disabled. The plaintiff also claims that Old Dominion violated the ADEA by treating him differently than other similarly situated younger employees and replacing him with a younger, less qualified employee. ADEA/ADA Complaint ¶ 35. The plaintiff can prove his entitlement to relief in two ways. The ordinary standard of proof requires that he show: (1) he was an employee covered by the ADEA; (2) he suffered an unfavorable action by an employer covered by the ADEA; and (3) age was a determining factor, meaning that but for the employer's motive to discriminate against him on the basis of age, he would not have been subject to that unfavorable action. *See E.E.O.C. v. Clay Printing Co.,* 955 F.2d 936, 940–41 (4th Cir.1992).

 It is undisputed that the plaintiff was an employee covered by the ADEA, *see* 29 U.S.C. § 631(a), and that Old Dominion, an employer covered under the

---

44. It might be material if the plaintiff attempted to negotiate the 1992 Agreement and Old Dominion rebuffed him, but he makes no such allegation and his testimony, the only material he cites in this regard, permits no such inference:

> Q. Okay. Tell me—did you have any discussion with Robin to negotiate the terms of this agreement, Exhibit 3?
> A. No.
> Q. So, this agreement was presented to you and you executed it?
> A. Yes.
> Q. Were you given a copy of the agreement?
> A. Yes.
> Q. Did you read the agreement before you signed it?
> A. Not all the way through.
> Q. Is that your practice to—
> A. No. I just felt like if Robin was doing something nice, she wouldn't be—I just signed it, very trusting of her.
> Q. What did you do with the copy of the agreement that you were given?
> A. I had a file there at the office. I put it there.
> Davis Dep. 71.

ADEA, *see id.* § 630(b), fired him. However, the plaintiff must "'produce direct evidence of a stated purpose to discriminate [on the basis of age] and/or circumstantial evidence of a stated purpose to discriminate [on the basis of age] of sufficient probative force to reflect a genuine issue of material fact.'" *E.E.O.C.*, 955 F.2d at 941 (quoting *Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988)). As the Fourth Circuit recognized, "when a plaintiff admits under oath that he or she cannot point to any statement or piece of physical evidence indicative of age discrimination, it undermines the plaintiff's claim." *Id.* In his deposition, the plaintiff admitted that no one at Old Dominion ever made a comment to him about his age, and he stated that his only evidence of age discrimination was that "I wouldn't get that bonus if I didn't reach 65, and I was getting pretty close to it." Davis Dep. 25; *see also id.* at 26 (indicating that he has no other reason to believe he was subject to age discrimination). Although these admission are not fatal, there is no evidence in the record that Old Dominion had a stated purpose to discriminate against the plaintiff on the basis of his age when it fired him. Similarly, there is no evidence that the plaintiff was even treated differently at work, let alone on account of his age. Indeed, the Response makes no reference to unlawful treatment while the plaintiff was employed by Old Dominion and merely argues that he was fired in violation of the ADEA.

▆ Similar to interference with ERISA rights claims under 29 U.S.C.

§ 1140, however, the plaintiff may also resort to the *McDonnell Douglas* scheme, *E.E.O.C.*, 955 F.2d at 941. Under that scheme, the plaintiff must establish a *prima facie* case, then the burden shifts to Old Dominion to articulate a legitimate, nondiscriminatory reasons for taking action against the employee. If Old Dominion meets its burden, then the plaintiff bears the ultimate burden to prove that Old Dominion's stated reason is pretext. *E.E.O.C.*, 955 F.2d at 941. That burden requires the plaintiff to demonstrate by a preponderance of the evidence that Old Dominion's action was based upon age or that its proffered reason is "'unworthy of credence.'" *Id.* (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Unlike the interference claim under 29 U.S.C. § 1140, however, the court will not assume that the plaintiff established a triable issue regarding his *prima facie* case because it is clear that he did not.

▆ In order to establish a *prima facie* case that age was a determining factor in firing the plaintiff, the plaintiff must show: (1) he was an employee covered by the ADEA; (2) he was fired by an employer covered by the ADEA; (3) at the time he was fired, he was performing at a satisfactory level, meeting his employer's legitimate expectations, and (4) following his firing, he was replaced by a person outside the protected class.[45] *Id.* The first two elements are met, but the plaintiff offers no evidence to establish that his replacement was outside the protected class.[46]

---

**45.** A individual in the protected class is "at least 40 years of age." *See* 29 U.S.C. § 631(a).

**46.** The plaintiff only alleges that he was replaced by a younger employee in violation of the ADEA. ADEA/ADA Comp. ¶ 35. Of note, the ADEA/ADA Complaint alleges that the replacement, the plaintiff's brother Phillip Davis, is fifteen years younger than the plaintiff. *Id.* ¶ 15. The plaintiff was sixty-two at the time he was fired. Accordingly, if the replacement is, in fact, fifteen years younger than the plaintiff, then the replacement was within the protected class. *See* 29 U.S.C. § 631(a).

Additionally, he fails to adduce any evidence that he was performing at a satisfactory level, meeting Old Dominion's legitimate expectations in September 2008. The plaintiff does not dispute that he missed fifty-two days of work in 2008.[47] Moreover, he admitted under oath that he thought he was fired because he was not doing his job and that Ray had told him he was missing too many days at work. Davis Dep. 25 and 45. At the summary judgment phase, the court is not weighing the facts to determine the truth, and, therefore, these parts of the record do not mandate summary judgment. However, absent any evidence in the record supporting an inference that the plaintiff was performing his job at a satisfactory level, meeting Old Dominion's legitimate expectations, they certainly underscore that there is no genuine issue that age was a determining factor in firing him.

■ The plaintiff also fails to show that he can establish a *prima facie* case that he endured disparate treatment on the basis of his age. In order to establish a *prima facie* case, the plaintiff must show: (1) he was an employee covered by the ADEA; (2) he suffered an adverse employment action; and (3) the adverse employment action raises a reasonable inference of unlawful discrimination. *See, e.g., Jackson v. Winter,* 497 F.Supp.2d 759, 767 (E.D.Va.2007) (citations omitted). As stated by the Fourth Circuit, "[a]n adverse employment action is a discriminatory act which 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *James v. Booz–Allen & Hamil-*

*ton, Inc.,* 368 F.3d 371, 375 (4th Cir.2004) (quoting *Von Gunten v. Maryland,* 243 F.3d 858, 865 (4th Cir.2001)). As already noted, the plaintiff offers no evidence that he was treated differently at work, let alone on account of his age, and, moreover, the Response makes no reference to unlawful treatment while he was employed by Old Dominion. *See Evans v. Techs. Apps. & Serv. Co.,* 80 F.3d 954, 960 (4th Cir.1996) (recognizing that "unsubstantiated allegations and bald assertions" are insufficient to show discrimination). Accordingly, because the plaintiff fails to show that he can establish a *prima facie* case, his claim fails as a matter of law.

### B. ADA Claim

■ Count II of the ADEA/ADA Complaint is predicated on the allegation that Old Dominion violated the ADA by firing the plaintiff on account of a disability, refusing to make reasonable accommodations for him, and treating him differently than other, non-disabled employees of Old Dominion. In order to prove Old Dominion violated the ADA, the plaintiff must first establish that he is a "qualified individual with a disability" under the ADA. *See Rohan v. Networks Presentations LLC,* 375 F.3d 266, 272 (4th Cir.2004); 42 U.S.C. § 12112 (2006).[48] A qualified individual with a disability is an individual with a disability "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individuals holds or desires." 42 U.S.C. § 12111(8). Accordingly, the plaintiff had to show that there is a genuine

---

47. *See supra* note 13.

48. Amendments to the ADA took effect on January 1, 2009, after the relevant conduct underlying the plaintiff's ADA claims. As the Fourth Circuit recognized, "Congress did not express its intent for these changes to apply retroactively," thus the court must look to the ADA in its form prior to the amendments. *See Shin v. Maryland Med. Sys. Corp.,* 369 Fed.Appx. 472, 478 n. 14 (4th Cir.2010) (citing *Landgraf v. USI Film Prods.,* 511 U.S. 244, 270–71, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) and *Olatunji v. Ashcroft,* 387 F.3d 383, 389 (4th Cir.2004)).

issue of material fact that he is both qualified and disabled. *Rohan*, 375 F.3d at 272. The court need not determine whether the plaintiff offers sufficient evidence that he was disabled, because it is clear that he fails to meet his burden to show that he was qualified at the relevant time.[49]

In order to survive summary judgment, the plaintiff had to show that with or without reasonable accommodations he could perform the essential functions of his position at Old Dominion or a position that he desired. The essential functions of a job are those "that bear more than a marginal relationship to the job at issue." *Porter v. U.S. Alumoweld Co., Inc.*, 125 F.3d 243, 247 n. 3 (4th Cir. 1997). As a threshold matter, the plaintiff never indicates that he desired a position other than the one he occupied at the time he was fired.[50] Accordingly, the court need only determine if he made a sufficient showing in regards to the position he occupied at the time he was fired. The parties do not dispute that the plaintiff was a Vice President of the Beverage, $CO_2$, and Vending Department and that his focus was efforts on development of the drink and snack vending operation at Old Dominion.

*See* Mem. in Supp. of Mot. for Summ. J. 4; ADEA/ADA Compl. ¶ 10. In his deposition, the plaintiff testified that his duties were to "[o]versee the operations of the division" and "just go get the business." Davis Dep. 26. He also testified that he was often out of the office on calls or following leads. *See id.* 45. The plaintiff does not point to any support in the record, let alone allege, that he could perform the essential functions of his job, with or without reasonable accommodations, at the relevant times.[51] He merely alleges he "was a qualified employee with a disability." Mem. in Opp. of Mot. for Summ. J. 27. This unsupported assertion would not allow a jury to reasonably find that he was qualified.[52] The plaintiff fails to show there is a genuine triable issue that he was a qualified individual under the ADA. Accordingly, his claim fail as a matter of law.

Because the plaintiff fails to make a sufficient showing to establish the existence of elements essential to his case, and on which he bears the burden of proof, with respect to all of his claims under the Amended Complaint and all of his claims under the ADEA/ADA Complaint, the

---

**49.** Of note, like his ADEA claim, the plaintiff admitted that he could not point to any statement or piece of physical evidence indicative of discrimination in violation of the ADA. *See E.E.O.C.*, 955 F.2d at 941. In response to the question "How do you think Atlantic Dominion violated the [ADA] with respect to you?", the plaintiff responded, "I don't know." Davis Dep. 86.

**50.** In the ADEA/ADA Complaint, the plaintiff only claims that "he can, with reasonable accommodation, perform the essential functions of the job that he held while in the employ of Old Dominion." ADEA/ADA Complaint ¶ 39. He does not allege any desired position nor that he could perform his job without reasonable accommodation.

**51.** The court again notes that the plaintiff does not raise a dispute that he missed fifty-two days of work in 2008. *See supra* note 13.

Moreover, plaintiff admitted under oath that he thought he was fired because he was not doing his job and that Ray had told him he was missing too many days at work. Davis Dep. 25 and 45.

**52.** The plaintiff actually seeks to establish that he was not qualified. He alleges that his "condition impaired his ability to perform his duties as Vice President," Mem. in Opp. of Mot. for Summ. J. 27, and he highlights Dr. Parker's opinion that "[p]laintiff was *incapable* of performing the duties of his position as senior vice-president." *Id.* at 18 (emphasis added). Dr. Parker is precluded from testifying at trial to this opinion, *see* Order, ECF No. 66, but it is significant that the plaintiff seeks to establish this fact despite pursuing an ADA claim.

court **FINDS** that the defendants are entitled to judgment as a matter of law.

### Conclusion

For the reasons stated above, the court **GRANTS** the defendants' Motion for Summary Judgment. The Clerk shall enter judgment for defendants in both cases, action no. 2:09cv603 and action no. 2:10cv130.

**IT IS SO ORDERED.**